CHRISTINE A. BYRNE, PETITIONER v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 38959-84.　　　　Filed May 16, 1988.

*Mary F. Thurber,* for the petitioner.
*Frank Agostino,* for the respondent.

### OPINION

RAUM, *Judge:* The Commissioner determined a deficiency in petitioner's 1981 income tax in the amount of $5,561. The issue before us is the excludability from petitioner's income under section 104(a)(2), I.R.C. 1954, of amounts she received from her former employer.[1] The case was submitted on the basis of a stipulation of facts and attached exhibits. At the time the petition herein was filed, petitioner resided in New Jersey.

In 1980, petitioner was an employee of Grammer, Dempsey & Hudson, Inc. (Grammer or the company), a company engaged in the sale of steel. Petitioner worked as a clerk in Grammer's billing department. By 1980 she had been with Grammer for 12 years.

On or about September 12, 1980, while petitioner was employed by Grammer, the Equal Employment Opportunity Commission (the EEOC or the Commission) initiated an investigation into the payroll structure of Grammer's sales department. The investigation concerned itself with the disparity in wages between males and females in the sales department. Petitioner was not a member of the sales department which was the target of the Commission's investigation and therefore had no interest in any potential backpay award that might have resulted from the investigation.

During the course of the investigation, officials from Grammer singled out petitioner as a person who may have informed the Commission of the wage disparity in the sales

---

[1]This issue was raised in an amended petition. The original petition did not challenge the inclusion of the amounts received in gross income; it complained only that "the [t]ax on corrected taxable income" should have been computed on "Schedule G, Income Averaging." Petitioner did not thereafter argue the income averaging issue, and we regard it as having been abandoned.

department. Shortly thereafter, petitioner was terminated from the employment of the company. In her 12 years with the company, she had no record of disciplinary or work-performance reprimands and had received a number of raises and promotions.

The EEOC concluded that Grammer's termination of petitioner had the effect of discouraging Grammer's employees from participating in the Commission's investigation of wage disparity in the sales department. As a consequence, in March 1981, it filed a "Complaint For Preliminary Relief" in the Federal District Court of New Jersey alleging that the company "impeded the administrative proceedings of the Commission to administer, interpret, and enforce the FLSA [Fair Labor Standards Act]" and "violated Section 215(a)(3), by discriminating against employees who participate in the Commission's administrative proceedings at its Newark facility." The discrimination alleged in the complaint included both "Encouraging employees not to participate in the Commission's administrative process" and "Intimidation of employees" who so participated. The company's discharge of petitioner was listed as a specific instance of such discrimination against employees. The complaint requested as relief that the court compel the company as follows:

A. Immediately to cease and desist from any and all acts of impediment to the Commission's administrative process.

B. Immediately to cease and desist from all forms of intimidation and discouragement of employees to participate in the Commission's administrative process.

C. Immediately to reinstate Christine Byrne to her former position with full benefits.

The complaint was supported by two affidavits, one prepared by the EEOC District Director for the Philadelphia District and the other prepared by the EEOC specialist who investigated petitioner's discharge. The latter affidavit describes the circumstances surrounding petitioner's discharge and the effect of the discharge on the participation of the company's other employees in the EEOC administrative proceedings. This affidavit of the EEOC specialist states that after petitioner participated in the EEOC's administrative proceedings, petitioner told the investigator that her

job duties had been changed so that she was expected to perform work usually assigned to part-time employees. Petitioner perceived this change in her duties as an attempt on the part of the company to make it look as though she were refusing to do work and thereby to build a case for firing her.

The affidavit further states that during the affiant's investigation of petitioner's discharge, several employees of the company expressed fear of participating in the EEOC proceedings. They described to the EEOC investigator an atmosphere of fear and intimidation at the company after petitioner's discharge. The employees who were questioned also indicated that Grammer made it clear to them that petitioner was to blame for the EEOC investigation (i.e., she was identified as the employee who notified the EEOC of wage disparity) and that the company disapproved of the investigation. According to the affidavit, one employee who was considered to be the key to the EEOC investigation refused to participate, even after he was assured that his statements were confidential and privileged, because he feared retaliation and even loss of his job with the company.

The reason the Commission filed its complaint requesting, among other things, that petitioner be reinstated was to restore the status quo during the investigation and thereby to eliminate harm to the Commission and its investigation. The EEOC District Director's affidavit states that "the Commission did not have an opportunity to complete its investigation before [Grammer] disrupted the status quo in regard to Christine Byrne's employment and the stability of other employees." No backpay was requested for petitioner because such an award was not the goal of the EEOC complaint. Instead, her reinstatement was sought solely to eliminate interference with the EEOC's investigation.

The EEOC's action against Grammer was settled. On March 27, 1981, the U.S. District Court for New Jersey ordered the action dismissed because "it has been reported to the Court that the above-entitled action has been settled." On June 10, 1981, a "Stipulation of Settlement" was filed with the District Court. In the Stipulation of Settlement, Grammer agreed not to "impede the Commission's administrative processing of its * * * investi-

gation * * * initiated on September 12, 1980." In addition, Grammer agreed to divulge no information about its employees' opposition to unlawful employment practices to future employers and to expunge from employee records any unfavorable comments that stemmed from the EEOC investigation. Specifically as to Christine Byrne, Grammer agreed to "provide no information to anyone including but not limited to potential employers, concerning Christine Byrne's employment with [Grammer], except verification of employment, dates of employment, positions, titles, or classifications held, the reason for termination as resignation, and if any employment rating is requested, [Grammer] shall respond that its policy is not to rate its employees."

The EEOC had initially requested, in its complaint, that the company be required to reinstate petitioner. The company would not settle on that basis, however, because it believed that petitioner's presence would create further friction within the company, especially between management and employees. During the settlement negotiations, the company suggested that the Commission ask petitioner to propose a lump-sum payment that she would accept in lieu of reinstatement. The Commission communicated the company's inquiry to petitioner and petitioner said she would accept $20,000 not to return to her former position. The $20,000 figure represented the value to petitioner of giving up both her job, including the contact with coworkers that she enjoyed for 12 years, and any claim she might have against the company. The company agreed to pay petitioner the $20,000 requested.

The stipulation of settlement incorporated this agreement between the company and petitioner. It required that Grammer "deliver within seven (7) days of the execution of this Stipulation to the Equal Employment Opportunity Commission * * * a check made payable to Christine Byrne, in the amount set forth in the Release executed by Christine Byrne." The release referred to required payment in the amount of $20,000 by the company. In consideration of the $20,000, petitioner agreed to "waive, release, and forever convenant [sic] not to sue Grammer, Dempsey and Hudson, Inc., its directors, officers, agents, representatives, successors, and assigns, with respect to any matter relating to or

arising out of the charges or matters on which the said Stipulation of Settlement is based." She further agreed to "remise, release, and forever discharge [the same parties] from any and all liability arising out of Civil Action No. 81-828 before the U.S. District Court for the District of New Jersey, Releasor's employment by Releasee, and Releasor's separation therefrom." The release states that it is understood by the parties thereto that it "is given in compromise of the disputed claims." Finally, it provides that "no promise or inducement for this Release has been made except as herein set forth."

Petitioner did not include the $20,000 payment made to her by the company as income on her 1981 income tax return. The $20,000 was not reflected as income in the W-2 prepared for her by the company. She did show $1,463 unemployment compensation received from the company on that return, but reported that none of it was taxable. The Commissioner has determined in his notice of deficiency that the $20,000 received pursuant to the release, as well as the $1,463 unemployment compensation, is taxable income to petitioner.[2]

The Government argues that the $20,000 paid to petitioner under the release and settlement is not properly excluded from her income under section 104(a)(2), I.R.C. 1954. Under section 104(a)(2), I.R.C. 1954, "gross income does not include * * * the amount of any damages received (whether by suit or agreement) on account of personal injuries or sickness." There is no suggestion that petitioner received anything on account of "sickness." And the Government contends that the $20,000 was not paid to petitioner as "damages received * * * on account of personal injuries." In this connection, it argues that petitioner did not have or assert a claim against the company based on alleged "personal injuries" and that the company did not pay the $20,000 as compensation for personal injuries, but paid it to ensure labor peace.

Damages excludable by operation of section 104(a)(2) expressly include damages recovered either "by suit or [by]

---

[2]No separate issue is now before us in respect of the $1,463 item. The parties have stipulated that "The sole issue for decision is whether petitioner must include in gross income $20,000 received from Grammer."

agreement." It is clear that petitioner here did not herself institute a suit against her employer. Instead, the EEOC brought such a suit. In seeking redress of harm to the Commission's investigation of Grammer, that suit requested the reinstatement of petitioner—relief that would incidentally benefit petitioner. The company chose not to reinstate petitioner, but to settle with petitioner and the EEOC on the basis of a lump-sum payment to petitioner. No argument is made that this settlement with petitioner does not constitute an "agreement" within the meaning of section 104(a)(2). The argument made by the Government is that petitioner had not asserted a claim and that on this basis, the $20,000 payment is not excludable under section 104(a)(2).

Although the record does not otherwise disclose that petitioner ever asserted any claims against the company, her settlement with the company explicitly provides that it was made "in compromise of the disputed claims." In the release executed by the company and petitioner, the consideration for the $20,000 payment is stated to be petitioner's agreement to forgo either suing Grammer or holding it liable in connection with the EEOC action and petitioner's employment with and separation from Grammer. Given the explicit references in the settlement to petitioner's potential claims against the company, we think the Government's argument based on her failure to assert a claim is misguided. The fact that the EEOC suit provided the context for the settlement with petitioner and that there is no indication that petitioner herself asserted or threatened suit based on her discharge does not mean that no such claim existed or that the company did not settle on the basis of such a claim. The company explicitly acknowledged in the release that "disputed claims" were the basis of the settlement. In these circumstances, it is clear that the parties to the release contemplated claims which warrant an inquiry into the excludability of the damages received under section 104(a)(2), I.R.C. 1954.

The question still remains whether the damages received based on petitioner's claims were paid "on account of personal injuries." Sec. 104(a)(2), I.R.C. 1954. The issue is a factual one and the cases in which it has been addressed are many. Although the guiding principles are settled, the cases

are nonetheless difficult to reconcile due to their factual nature.[3] We must decide this case on its unusual facts, which include the settlement's origin in a suit by the EEOC rather than in the assertion of claims by petitioner.

The payment here was made in the context of a settlement agreement, rather than a judgment. Consequently, the most important fact in determining the purpose of the payment is "express language [in the agreement] stating that the payment was (or was not) made on account of personal injury." *Metzger v. Commissioner,* 88 T.C. 834, 847 (1987), on appeal (3d Cir., July 16, 1987); see *Bent v. Commissioner,* 87 T.C. 236, 244 (1986), affd. 835 F.2d 67 (3d Cir. 1987); *Glynn v. Commissioner,* 76 T.C. 116, 120 (1981), affd. without published opinion 676 F.2d 682 (1st Cir. 1982). In the absence of any such express language, " 'the intent of the payor' as to the purpose in making the payment" must nevertheless be determined. *Metzger v. Commissioner,* 88 T.C. at 847-848; *Fono v. Commissioner,* 79 T.C. 680, 694 (1982), affd. 749 F.2d 37 (9th Cir. 1984).

The settlement does not expressly provide whether the purpose of the payment was to compensate petitioner for personal injuries. We must nonetheless attempt to extract from the stipulated record before us the company's intent in paying petitioner the $20,000. In making this inquiry, we focus initially on the nature of the claims made and settled.[4] *Metzger v. Commissioner,* 88 T.C. 834 (1987); *Bent v. Commissioner,* 87 T.C. 236 (1986), affd. 835 F.2d 67 (3d Cir. 1987); *Glynn v. Commissioner,* 76 T.C. 116 (1981), affd. without published opinion 676 F.2d 682 (1st Cir. 1982).

---

[3]The Supreme Court stated in a different context in *Welch v. Helvering,* 290 U.S. 111, 116 (1933), "To attempt to harmonize [the cases] would be a futile task. They involve the appreciation of particular situations, at times with border-line conclusions." Cf. *Dawson v. Commissioner,* 59 T.C. 264, 268 (1972) (bona fide residence); *Heyn v. Commissioner,* 46 T.C. 302, 309 (1966) (casualty loss); *Wilson v. Commissioner,* 37 T.C. 230, 233-234 (1961), affd. 313 F.2d 636 (5th Cir. 1963) (deductibility of costs incurred to establish property right); *Green v. Commissioner,* 35 T.C. 1065, 1069-1070 (1961) (character of gain on sale of soil); *Haskins v. Commissioner,* T.C. Memo. 1982-730 (deduction of ground rents before opening of business); *Hansen v. Commissioner,* T.C. Memo. 1976-84 (signing of Form 1040 under duress); *Barry v. Commissioner,* T.C. Memo. 1955-12 (depletable interest in coal).

[4]We place greater weight on the claims which the release purports to settle than we do on the claims made in the EEOC's complaint. The release is broad-reaching and encompasses not only claims stemming from circumstances originally investigated by the EEOC, but also claims which appear to be of concern to petitioner and Grammer only. The broad range of claims enumerated in the release are clearly a better indication of the intent of the company in paying petitioner $20,000 than are the more limited claims alleged by a third party, the EEOC.

Central to the release are claims "with respect to any matter relating to or arising out of the [EEOC] charges" and "any and all liability arising out of Civil Action No. 81-828 before the U.S. District Court for the District of New Jersey." The charges made in the EEOC action were that the company "willfully violated Section 215(a)(3) [of the Fair Labor Standards Act], by discriminating against employees who participate in the Commission's administrative proceedings at its Newark facility." That section of the Fair Labor Standards Act provides that it is unlawful for any person "to discharge or in any other manner discriminate against any employee because such employee has * * * testified or is about to testify in any * * * proceeding" under or related to the Fair Labor Standards Act. Fair Labor Standards Act of 1938, sec. 15(a)(3), 52 Stat. 1068 (current version at 29 U.S.C. sec. 215(a)(3) (1982)). An employer who violates section 215(a)(3) is liable to the employee "for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including, without limitation, employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages." Fair Labor Standards Act of 1938, sec. 16(b), 52 Stat. 1069 (current version at 29 U.S.C. sec. 216(b) (1982)).

Petitioner apparently seeks to characterize the Fair Labor Standards Act claim, settled in the release, by reference to similar such claims under State law, and the Government does not suggest any other basis for characterization of the claim.[5] She contends that "the claims settled between petitioner and the payor were of a tort nature." She analogizes the claims arising from her discharge by the company to "personal injury torts" under relevant New Jersey law, i.e., "abusive, wrongful, and retaliatory discharge and defamation of character." She relies most heavily on the recently developed New Jersey "tort cause of action for employees discharged in violation of public policy.

---

[5]Neither party analyzes the nature of the claim in the manner suggested by *Metzger v. Commissioner,* 88 T.C. 834, 850-859 (1987), on appeal (3d Cir., July 16, 1987), and *Bent v. Commissioner,* 87 T.C. 236 (1986), affd. 835 F.2d 67 (3d Cir. 1987). Moreover, we have found no Federal authority which definitively characterizes sec. 215(a)(3) of the Fair Labor Standards Act (or similar provisions under a number of other Federal Acts) as redressing personal or tort-like injuries.

*Pierce v. Ortho Pharmaceutical Corp.,* 84 N.J. 58, 417 A.2d 505 (1980)."

Petitioner's analysis of the nature of the claims settled by analogy to State actions is a legitimate course to take, especially given the absence of other standards for reference (see p. 1008 n. 5, *supra*). However, it does not go far enough in that it does not dispose of all the potential State court actions to which the EEOC claim could be compared. For instance, the very New Jersey case, on which petitioner relies to characterize her Federal claim against the company as in the nature of a tort claim, also recognized, in the same circumstances, "a cause of action in contract."[6] *Pierce v. Ortho Pharmaceutical Corp.,* 84 N.J. 58, 72, 417 A.2d 505, 512 (1980); see *O'Sullivan v. Mallon,* 160 N.J. Super. 416, 390 A.2d 149 (Law Div. 1978). This action in contract was described as "predicated on the breach of an implied provision that an employer will not discharge an employee for refusing to perform an act that violates a clear mandate of public policy." *Pierce v. Ortho Pharmaceutical Corp.,* 84 N.J. at 72, 417 A.2d at 512. No reason is suggested for relying exclusively on the tort analogy when the contract action appears to apply equally well to the facts here.[7] Rather, the Federal claim seems to contain the elements of both the State tort and the State contract action. Consequently, the analogy to State court actions does not compel

---

[6]Both tort and contract actions have developed in other States. The tort of abusive discharge has developed in at least the following State courts as a means of compensating employees whose discharge was in violation of public policy: *Tameny v. Atlantic Richfield Co.,* 27 Cal. 3d 167, 164 Cal. Rptr. 839, 610 P.2d 1330 (1980); *Sheets v. Teddy's Frosted Foods, Inc.,* 179 Conn. 471, 427 A.2d 385 (1980); *Palmateer v. International Harvester Co.,* 85 Ill. 2d 124, 421 N.E.2d 876 (1981) revg. 85 Ill. App. 3d 50, 406 N.E.2d 595 (1980). *Frampton v. Central Indiana Gas Co.,* 260 Ind. 249, 297 N.E.2d 425 (1973); *Murphy v. City of Topeka-Shawnee County Dept. of Labor Serv.,* 6 Kan. App. 2d 488, 630 P.2d 186 (1981); *Sventko v. Kroger Co.,* 69 Mich. App. 644, 245 N.W.2d 151 (1976); *Nees v. Hocks,* 272 Or. 210, 536 P.2d 512 (1975); *Reuther v. Fowler & Williams, Inc.,* 255 Pa. Super. 28, 386 A.2d 119 (1978).

Other States have recognized an action in contract based on an implied covenant of good faith and fair dealing. See, e.g., *Cleary v. American Airlines,* 111 Cal. App.3d 443, 168 Cal. Rptr. 722 (1980); *Fortune v. National Cash Register Co.,* 373 Mass. 986, 364 N.E.2d 1251 (1977); *Monge v. Beebe Rubber Co.,* 114 N.H. 130, 316 A.2d 549 (1974). Cf. *Moffett v. Glick Co.,* 604 F. Supp. 229 (N.D. Ind. 1984); *Wehr v. Burroughs Corp.,* 438 F. Supp. 1052 (E.D. Pa. 1977) (recognizing a public policy exception to the employment at will doctrine in employment contracts. Still other courts have recognized contract claims based on an implied term governing dismissal. See *Rabago-Alvarez v. Dart Indus.,* 55 Cal. App.3d 91, 127 Cal. Rptr. 222 (Ct. App. 1976); *McNulty v. Borden, Inc.,* 474 F. Supp. 1111 (E.D. Pa. 1979).

[7]New Jersey has enacted legislation entitled the "Conscientious Employee Protection Act." N.J. Stat. Ann. sec. 34:19-1 (1986). It does not characterize claims made under it as either tort or contract claims.

the conclusion, requested by petitioner, that the claim settled is purely a tort-like claim.

Moreover, it is not clear that the claims settled by the broad terms of the release include only claims under the Fair Labor Standards Act and no potential State court actions either in tort or in contract. The release purports to settle "any and all liability arising out of [the EEOC action], Releasor's employment by Releasee, and Releasor's separation therefrom." The latter two bases of liability are sufficiently general that they could well encompass the State tort and contract actions previously discussed. Consequently, we cannot conclude that the claims settled include only personal injury claims.

Petitioner makes much of the fact that the EEOC did not request back pay for petitioner in its complaint against the company. She takes this to be an indication that no part of the settlement payment was made to compensate for contractual damages, i.e., lost wages. However, as we have already noted (page 1007 n. 4, *supra*) we consider the language of the release itself to be more probative of the company's reason for making the payment than the remedy requested in the EEOC complaint. Although the settlement of the EEOC action incorporated petitioner's release, it is by no means clear that the release covered only claims within the bounds of the EEOC complaint. The broad language of the release suggests, instead, that the parties to it took advantage of the opportunity provided them by the EEOC suit to resolve a range of issues between them—including, potentially, claims based on their employment contract.[8]

Once potential State claims are incorporated into the claims discharged by it, the release clearly is broad enough to encompass not only claims that would result in excludability of the resulting settlement but also claims that would result in settlement payments required to be included in income. Given the existence of claims falling into both of those categories, we cannot find that the full $20,000 settlement was paid exclusively as compensation for per-

---

[8]Petitioner also argues that the fact that the company did not withhold taxes from the payment indicates that it intended the payment to be an excludable payment for personal injury. While this treatment by the payor may be relevant, it is certainly not dispositive. See *Whitehead v. Commissioner*, T.C. Memo. 1980-509; *Dalbo v. Commissioner*, T.C. Memo. 1969-220; cf. *Madson v. Commissioner*, T.C. Memo. 1985-3.

sonal injuries. Indeed, we are satisfied that the claims settled do encompass to a substantial extent elements of both an excludable (tort-like) claim and of a taxable claim. In these circumstances, we follow the course laid out in *Eisler v. Commissioner*, 59 T.C. 634, 640-641 (1973), which undertook to apportion a settlement payment between a deductible portion and a portion required to be capitalized.[9] Doing the best we can on the record before us, we estimate that the claims settled here were tort-like claims or had tort-like elements to the extent of 50 percent, and that the balance is taxable. As a result, $10,000 of the settlement received by petitioner is excludable from her gross income under section 104(a)(2) as "damages received * * * on account of personal injuries."[10]

*Decision will be entered under Rule 155.*

---

[9]*Metzger v. Commissioner*, 88 T.C. 834 (1987), also provides some support for the allocation of a settlement between taxable and nontaxable elements in the circumstances in which a broad release settles a variety of claims between two parties. In that case, the Court approved the taxpayer's exclusion of half of the amount of the settlement from her income, finding that "Not less than [that amount] of the settlement payment constituted damages on account of personal injuries to petitioner." *Metzger v. Commissioner*, 88 T.C. at 845.

[10]Petitioner, relying on *Roemer v. Commissioner*, 716 F.2d 693, 696 (9th Cir. 1983), revg. 79 T.C. 398 (1982), argues that once she has shown the existence of tort claims, she is not required to present evidence going to an allocation of the damages between tort and contract claims. Her reliance on *Roemer* is misplaced. *Roemer* recognized that when the claim at the root of a damage award was a tort claim, the amount of damages would be measured in part by lost wages, but that the tort award should not be treated as income to the extent it was so measured. This Court has followed that principle. See *Metzger v. Commissioner*, 88 T.C. at 857-858; *Bent v. Commissioner*, 87 T.C. at 250; *Threlkeld v. Commissioner*, 87 T.C. 1294, 1299 (1986). However, the situation here does not fall within the *Roemer* principle cited by petitioner. Here, we have been unable to find that the claims settled were solely claims of a tort-like nature. Since both personal injury claims and other claims are settled by the release, the burden is on petitioner to present evidence to allocate the settlement payment between includable and excludable amounts.