Christine A. BYRNE, Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE.

No. 89–1115.

United States Court of Appeals, Third Circuit.

Argued June 15, 1989.

Decided Aug. 22, 1989.

---

Gary R. Allen, Ann Belanger Durney, Bruce Ellisen (Argued), Tax Div., Dept. of Justice, Washington, D.C., for appellee.

Mary F. Thurber (Argued), Lewis & McKenna, Saddle River, N.J., for appellant.

James I.K. Knapp, Acting Asst. Atty. Gen.

Before SLOVITER and COWEN, Circuit Judges and ROTH, District Judge.*

## OPINION OF THE COURT

COWEN, Circuit Judge.

Christine Byrne received $20,000 in 1981 in return for her agreement not to pursue Fair Labor Standards Act ("FLSA") and state law wrongful discharge claims against her former employer. This appeal requires us to decide whether the Tax Court properly determined that one-half of these settlement proceeds represented taxable income. Because we conclude that the entire settlement is excludable under 26 U.S.C. § 104(a)(2), we will reverse the order of the Tax Court.

_____

* Honorable Jane R. Roth, United States District Judge for the District of Delaware, sitting by

## I.

The facts of this case are discussed extensively in the Tax Court opinion, *Byrne v. Commissioner of Internal Revenue*, 90 T.C. 1000 (1988). We summarize them here to provide some background for our legal discussion.

In 1980, Christine Byrne was employed as a clerk in the billing department of Grammer, Dempsey & Hudson, Inc. ("Grammer"), a company engaged in the selling of steel. She had been employed with the company for twelve years.

In September 1980, the Equal Employment Opportunity Commission ("EEOC") initiated an investigation into the payroll structure of Grammer's sales department. The investigation was concerned with the disparity in pay between male and female employees in Grammer's sales department. Although Byrne was not employed in the sales department, Grammer identified her as an employee who might have informed the EEOC of the wage disparity. Soon thereafter, she was discharged from her employment with the company. In her twelve years at Grammer, Byrne had received a number of raises and promotions. She had no record of disciplinary or work performance reprimands.

The EEOC concluded that Grammer's discharge of Byrne was calculated to discourage Grammer employees from cooperating with the EEOC investigation. It filed a complaint in the Federal District Court of New Jersey which alleged that Grammer was impeding the EEOC investigation and discriminating against employees who had cooperated with the investigation. The complaint requested that the district court enjoin Grammer from intimidating and discouraging its employees from cooperating with the investigation, and also asked that the court order that Christine Byrne be immediately reinstated to her position with Grammer.

During settlement negotiations between Grammer and the EEOC, Grammer resist-

designation.

ed the EEOC's request that it reinstate Byrne, on the basis that Byrne's presence would create further friction between management and employees. Grammer suggested that the EEOC ask Byrne if she would accept a lump-sum payment in lieu of reinstatement. When the EEOC communicated this position to Byrne she stated that she would accept $20,000 not to return to her position with Grammer. Grammer agreed to pay Byrne the $20,000. The Tax Court found that "[t]he $20,000 figure represented the value [to Byrne] of giving up both her job, including the contact with co-workers that she enjoyed for 12 years, and any claim she might have against the company." 90 T.C. at 1004.

The stipulation of settlement between Grammer and the EEOC incorporated the agreement between Byrne and Grammer. It required that Grammer "deliver within seven (7) days of the execution of this Stipulation to the Equal Employment Opportunity Commission ... a check made payable to Christine Byrne, in the amount set forth in the Release executed by Christine Byrne." App. at 29. The release specified that Byrne was to receive $20,000 in consideration for her agreement to "hereby waive, release, and forever convenant [sic] not to sue Grammer, Dempsey and Hudson, Inc., its directors, officers, agents, representatives, successors and assigns, with respect to any matter relating to or arising out of the charges or matters on which the said Stipulation of Settlement is based." App. at 31. Byrne further agreed to "remise, release, and forever discharge [the same parties] from any and all liability arising out of Civil Action No. 81–828 before the United States District Court for the District of New Jersey, Releasor's employment by Releasee, and Releasor's separation therefrom." App. at 31.

The $20,000 payment was not reflected as income on the W–2 form prepared for Byrne by Grammer, and Byrne did not include the payment as income on her 1981 income tax return. The Commissioner of

Internal Revenue assessed a deficiency in Byrne's 1981 income tax of $5,561, a figure which was primarily based on the fact that Byrne did not report the $20,000 settlement as income.[1]

Byrne petitioned the Tax Court for relief from the Commissioner's notice of deficiency. That Court, after considering stipulated facts and various exhibits, held that one-half, or $10,000 of the $20,000 settlement was excludable from Byrne's income pursuant to 26 U.S.C. § 104(a)(2), which excludes from gross income "the amount of any damages received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injuries or sickness." See 90 T.C. at 1011. Byrne appeals the Tax Court's decision, contending that the entire settlement is excludable pursuant to section 104(a)(2). We have jurisdiction over her appeal pursuant to 26 U.S.C. § 7482(a).

## II.

█ We recently had occasion to review the section 104(a)(2) exclusion in the case of *Bent v. Commissioner*, 835 F.2d 67 (3d Cir.1987). Judge Maris succinctly summarized this provision as follows:

It is true that section 61(a) of the Internal Revenue Code of 1954 provides that, except as otherwise provided in the Code, gross income includes "all income from whatever source derived." The taxpayer, however, relies on section 104(a)(2) of the Code which provides that, with exceptions not here relevant, "gross income does not include ... (2) the amount of any damages received (whether by suit or agreement) on account of personal injuries or sickness ..." The Treasury Regulations on Income Tax provide in section 1.104–1(c) (26 C.F.R. § 1.104–1(c)) that "The term 'damages received (whether by suit or agreement)' means an amount received (other than workmen's compensation) through prosecution of a legal suit or action based

---

1. The Commissioner also determined in his notice of deficiency that $1,463 in unemployment compensation received by Byrne and reported as non-taxable by her was subject to tax. The $1,463 item, however, is no longer in dispute, and the only issue before us is the tax status of the $20,000 settlement. See 90 T.C. at 1005 and n. 2.

upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution."

835 F.2d at 69.

The issue before the Court in *Bent* was whether a sum received in settlement of a claim for damages for violation of an individual's First Amendment right of free speech was excludable under this provision. The plaintiff in that case, a high school teacher, had been denied reemployment in his teaching position because he had publicly criticized the actions of school administrators. The Board of Education settled his claim for $24,000, and the Commissioner determined that the settlement was taxable income.

We rejected the Commissioner's position and held that the settlement fell within the section 104(a)(2) exclusion. We found that the allegation of a first amendment violation was a "tort type right," 835 F.2d at 69, and rejected the Commissioner's argument that because the settlement included a sum to compensate Bent for lost wages, that portion of the settlement should be taxable. Instead, we adopted the reasoning of the Court of Appeals for the Ninth Circuit in *Roemer v. Commissioner*, 716 F.2d 693 (9th Cir.1983), which had stated that:

> The nonpersonal consequences of a personal injury, such as a loss of future income, are often the most persuasive means of proving the extent of the injury that was suffered. The personal nature of an injury should not be defined by its effect.

*Id.* at 699. The sum intended to compensate Bent for lost wages, we held, was excludable under section 104(a)(2). *See* 835 F.2d at 70; *see also Threlkeld v. Commissioner*, 848 F.2d 81, 84 (6th Cir.1988) (adopting reasoning of the Third and Ninth Circuits in holding that all compensation for a personal injury, even compensation for affecting that person's professional pursuits, is excludable under section 104(a)(2)).

Based upon our ruling in *Bent*, we reject the Commissioner's argument in this case that the settlement is taxable because it was intended, at least in part, to compensate Byrne for lost wages due to her wrongful firing. The relevant inquiry, as the Tax Court noted, is whether the settlement was received on account of personal or non-personal injuries, not whether the damages compensate the taxpayer for economic losses. To the extent that the Commissioner argues that because the settlement was intended to compensate Byrne for economic losses it is therefore compensating her for non-personal injuries, we find this argument to have been explicitly rejected in *Bent*, and we reject it again here.

### III.

Rejecting this argument, however, does not settle the issue of whether the settlement Byrne received was on account of personal or nonpersonal injuries. As defined by the relevant regulation, personal injury claims assert violations of "tort or tort type rights." 26 C.F.R. § 1.104–1(c). Byrne argues that the Tax Court erred when it characterized the claims she settled as one-half personal injury, "tort type" claims, and one-half nonpersonal injury, contract type claims. She asserts that each of the claims she settled is better characterized as a "tort or tort type" personal injury claim, and that the entire $20,000 settlement is therefore excludable under section 104(a)(2). We agree and will reverse the order of the Tax Court.

Initially, we note that we agree with the Tax Court's analysis of the facts of this case. Since Byrne settled with Grammer before retaining a lawyer or filing a complaint, she did not have the opportunity to formulate or characterize her claims against Grammer. The settlement agreement, which speaks in generalized terms, also fails to characterize these claims. Given this lack of documentary evidence, the Tax Court looked to the facts underlying Byrne's potential claims and concluded that Byrne settled a claim pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b), and a "wrongful discharge" claim under New Jersey state law. We find no error in these findings.

The more difficult issue is whether these claims are properly characterized as assert-

ing violations of "tort or tort type rights" and thus qualify for the section 104(a)(2) exclusion. We address each claim—the Fair Labor Standards Act claim and the New Jersey state law wrongful discharge claim—in turn.

## A. The Fair Labor Standards Act Claim

■ Section 215(a)(3) of the Fair Labor Standards Act states that it shall be unlawful for any person—

> (3) to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee....

29 U.S.C. § 215(a)(3).

A willful violation of this provision subjects the offender to criminal sanction. *See* 29 U.S.C. § 216(a) ("Any person who willfully violates any of the provisions of section 215 of this title shall upon conviction thereof be subject to a fine of not more than $10,000, or to imprisonment for not more than six months, or both."). The Act also provides for the following civil remedy:

> Any employer who violates the provisions of section 215(a)(3) of this title shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages.

29 U.S.C. § 216(b).

An additional provision of the Act provides that a court may reduce or omit the otherwise mandatory award of "liquidated

damages" if the employer can demonstrate that it acted in good faith and had reasonable grounds for believing its action was not a violation of the Act. *See* 29 U.S.C. § 260; *see also Brock v. Claridge Hotel and Casino,* 846 F.2d 180, 187 (3d Cir.) (employer has "real burden of proof" to overcome presumption of award of "liquidated damages"), *cert. denied,* —— U.S. ——, 109 S.Ct. 307, 102 L.Ed.2d 326 (1988).

We are convinced that a private lawsuit seeking the remedies established by section 216(b) for violations of section 215(a)(3) is a claim asserting the violation of a personal injury tort or tort type right, rather than for an economic right arising out of contract. We reach this conclusion because such a suit alleges the violation of a duty owed the plaintiff by the defendant employer which arises by operation of the Act. This duty is independent of any duty an employer might owe his employee pursuant to an express or implied employment contract; it arises by operation of law.[2] Thus, the statutory claim seeks to remedy a statutory violation that the law has defined as wrongful. *See Black's Law Dictionary* 1660 (rev. 4th ed. 1968) ("Tort" defined as a "wrong independent of contract" and "a violation of some duty owing to plaintiff, and generally such duty must arise by operation of law and not by mere agreement of the parties."). It is more tort-like than contract-like, and we therefore hold that the settlement of a claim that an employer has violated section 215(a)(3) of the Fair Labor Standards Act is the settlement of a personal injury claim, as that term is used in section 104(a)(2), and that the proceeds of the settlement are excludable from federal income tax.[3]

## B. The New Jersey State Law "Wrongful Discharge" Claims

■ As the Tax Court recognized, the settlement between Byrne and Grammer

---

**2.** In addition, the Tax Court acknowledged that a component of the claim which Byrne was pursuing was for defamation, 90 T.C. at 1008, and even the Commissioner recognizes that at least to that extent, the Byrne claim was for personal injury. *See* Brief for Appellee at 14.

**3.** This conclusion is also supported by the fact that the Fair Labor Standards Act criminalizes willful violations of section 215(a)(3), *see* 29

U.S.C. § 216(a), and by the fact that the Act provides for "liquidated damages" in an amount equal to the plaintiff's demonstrable compensatory damages. *See* 29 U.S.C. § 216(b). Both of these provisions provide support for the conclusion that the statutory remedy for violations of the section 215(a)(3) exists to redress an act the law defines as "wrongful."

also precluded Byrne from pursuing state law claims against Grammer under the state law doctrine of "wrongful discharge." This doctrine, as articulated by the New Jersey Supreme Court,[4] holds that "an employee has a cause of action for wrongful discharge when the discharge is contrary to a clear mandate of public policy." *Pierce v. Ortho Pharmaceutical Corp.*, 84 N.J. 58, 72, 417 A.2d 505, 512 (1980).

The Supreme Court in *Pierce* defined the wrongful discharge action as follows:

> An employee who is wrongfully discharged may maintain a cause of action in contract or tort or both. An action in contract may be predicated on the breach of an implied provision that an employer will not discharge an employee for refusing to perform an act that violates a clear mandate of public policy.

> An action in tort may be based on the duty of an employer not to discharge an employee who refused to perform an act that is a violation of a clear mandate of public policy. In a tort action, a court can award punitive damages to deter improper conduct in an appropriate case. That remedy is not available under the law of contracts.

84 N.J. at 72–73, 417 A.2d at 512 (citations omitted).

The Tax Court found that the "existence of claims falling into both [the tort and contract] categories" required it to allocate the settlement between those two types of claims. 90 T.C. at 1010–11. While we agree with this general principle, we disagree with the Tax Court's application of the principle in this case.

We recognize that the New Jersey Supreme Court's characterization of the causes of action it recognized in *Pierce* as "contract or tort or both" is not binding on our characterization of these claims for tax purposes. The issue of whether a claim is one for personal injury such that it quali-

fies for the § 104(a)(2) exclusion is an issue of federal law, and it is possible that a federal court might conclude that a state "contract" claim does, for purposes of § 104(a)(2), allege the violation of "tort or tort type" rights, or vice-versa. In this case, we believe that New Jersey's cause of action for wrongful discharge in violation of a clear mandate of public policy is comparable to the FLSA claim for retaliatory discharge discussed above. It therefore involves the assertion of a claim for damages for injury of a personal nature, rather than for economic loss. It follows that the section 104(a)(2) exclusion would apply to any recovery Byrne received as a consequence of bringing her potential state cause of action for wrongful discharge under the facts of this case. Of course, the claim Byrne could have asserted under the New Jersey law for defamation would be treated similarly. *See Roemer v. Commissioner*, 716 F.2d 693 (9th Cir.1983). We therefore find that the state law claims precluded by the settlement were predominately "tort or tort like" and qualify for the section 104(a)(2) exclusion.[5]

### IV.

We hold that both the Fair Labor Standards Act and state law wrongful discharge claims settled by Christine Byrne qualify for the section 104(a)(2) exclusion. We will reverse the order of the Tax Court and remand for the entry of an order consistent with this opinion.

---

**4.** The parties do not dispute that New Jersey law would have applied to the state law issues in this controversy.

**5.** We reject, however, Byrne's argument that the Tax Court erred when it denied her motion for litigation costs pursuant to 26 U.S.C. § 7430,

and her argument that she is entitled to such costs incurred in this appeal. We find the positions taken by the Commissioner to be reasonable given the unsettled nature of the law in this area.