Therese A. BURKE, Cynthia R. Center,
Linda G. Gibbs, Plaintiffs–Appellants,

v.

UNITED STATES of America,
Defendant–Appellee.

No. 90–5607.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 7, 1990.

Decided April 5, 1991.

Joseph E. Finley (argued), Baltimore,
Md., for plaintiffs-appellants.

Gary R. Allen, Acting Chief, Bruce R.
Ellisen (argued), Ann Belanger Durney,
U.S. Dept. of Justice, Appellate Section Tax
Div., Washington, D.C., John W. Gill, Jr.,
U.S. Atty., Knoxville, Tenn., Paul M. Pred-
more, Trial Atty., U.S. Dept. of Justice Tax
Div., Washington, D.C., for defendant-ap-
pellee.

Before MERRITT, Chief Judge;
JONES, Circuit Judge; and WELLFORD,
Senior Circuit Judge.[*]

NATHANIEL R. JONES, Circuit
Judge.

Three taxpayers, Therese A. Burke, Cyn-
thia R. Center and Linda Gibbs, appeal the
decision of the district court that funds
distributed to them as part of a settlement
agreement resulting from an action under
Title VII alleging sex discrimination were
not excludable as "damages received on
account of personal injuries or sickness"
under 26 U.S.C. § 104(a)(2). As we find
that injuries sustained in violation of Title

---

[*] The Honorable Harry W. Wellford assumed sen- ior status on January 21, 1991.

VII are "personal injuries," and that damages resulting from such injuries are excludable from taxation under § 104(a)(2), we reverse.

### I.

Taxpayers brought this action seeking refunds of federal income taxes and social security taxes withheld from payments taxpayers received from their employer in settlement of a Title VII sex discrimination action. Taxpayers were employed by the Tennessee Valley Authority ("TVA") and were members of the Office and Professional Employees International Union ("the union"). In 1984, Judy A. Hutcheson, another TVA employee, filed a Title VII action in the district court against TVA alleging unlawful discrimination in the payment of salaries based upon gender. The union subsequently joined the action in its representational capacity on behalf of certain employees of TVA, including the three taxpayers in the instant case.

In their second amended complaint, Hutcheson and the union generally alleged that the TVA had discriminated against female employees when, in 1981, it had increased the salaries of employees in certain male-dominated pay schedules but did not increase salaries of employees in certain female-dominated pay schedules. Moreover, TVA allegedly lowered salaries in some female-dominated schedules. Plaintiffs sought the following relief:

> Plaintiffs pray for judgment against defendants and for an order of this Court restraining and enjoining defendants from further discrimination against women in the SB schedule in wages and salaries and for a further order awarding back pay to all affected female employees in the SB schedule in an amount found to be just and proper sufficient to eliminate discrimination, for costs and for attorney's fees, and for such other relief as may be warranted in the premises.

J.App. at 33–34.

TVA filed a counterclaim against the union alleging fraud, misrepresentation, breach of contract, conspiracy with intent to defraud TVA and interference with contractual relationships. This counterclaim sought damages in the range of $30,000,000.00 (including treble and punitive damages). After both parties' claims survived cross motions for summary judgment, the parties decided to settle. The settlement agreement ("settlement") provided for the dismissal of TVA's counterclaim; a direct payment of $4200.00 to plaintiff Hutcheson; the conduct of a new regional salary survey; an amendment to the TVA/Union bargaining agreement to provide a method of salary arbitration for the future; and a lump sum payment of $5,000,000.00 to be distributed "at [the union's] discretion." Later the union asserted that distribution of the funds to the more than 8000 anticipated recipients was administratively unfeasible. Thus, an amended settlement agreement was entered into which provided that TVA would distribute the money directly to individuals designated by the union under a formula established by the union.

The formula established by the union took into consideration length of service in the affected salary schedule and rates of pay. TVA agreed to distribute the money, but only on the condition that it could withhold federal income tax and FICA tax from the payments. The union reluctantly agreed and the money was distributed. It is important to note that TVA did not tax its direct payment of $4,200.00 to Hutcheson. Nor did TVA tax the monies left over as undeliverable to named individuals which were turned over to the union. Further, those funds, when distributed by Union to other employees, were not taxed.

On December 6, 1988, Betty K. Adkins, Cathy Elaine Adkins, Edward Bailey and "more than 1,000 other persons" filed the instant tax refund action. Later plaintiffs filed a motion to amend their complaint and dismiss without prejudice all the plaintiffs except the three taxpayers named in this action. The motion was granted and the present action ensued.

### II.

 This appeal raises the question of whether damages received in a settlement

agreement in a Title VII action for sex discrimination are excludable as damages for "personal injury" under Internal Revenue Code § 104(a)(2). Whether the lower court properly applied § 104(a)(2) to disputed funds is a question of law and reviewed *de novo. Threlkeld v. Commissioner*, 848 F.2d 81, 83 (6th Cir.1988) (citing *Roemer v. Commissioner*, 716 F.2d 693, 696 (9th Cir.1983)).

■ As a general rule, under the Internal Revenue Code, "gross income means all income from whatever source derived." 26 U.S.C. § 61(a). Thus, all accessions of wealth are presumed to be "gross income" unless the taxpayer can show that the accession falls within a specific exclusion under the I.R.C. *See Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426, 430, 75 S.Ct. 473, 476, 99 L.Ed. 483 (1955). Section 104(a)(2) provides that "gross income does not include ... the amount of any damages received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injuries or sickness...." Several courts have held that for the purposes of § 104(a)(2), "personal injuries" means both physical and nonphysical injuries. *See Pistillo v. C.I.R.*, 912 F.2d 145, 148 (6th Cir.1990) (injury involved age discrimination); *Rickel v. Commissioner*, 900 F.2d 655, 658 (3rd Cir. 1990) (age discrimination); *Bent v. Commissioner*, 835 F.2d 67, 70 (3rd Cir.1987) (deprivation of first amendment rights); *Roemer v. Commissioner*, 716 F.2d 693, 697 (9th Cir.1983) (defamation). Treasury regulations define a claim for personal injuries under § 104(a)(2) as one which is based upon "tort or tort-type rights." 26 C.F.R. § 1.104–1(c) (1990). Essentially, the "exclusion under § 104(a)(2) is that the income involved must derive from some sort of tort claim against the payor." *Glynn v. Commissioner*, 76 T.C. 116, 119 (1981).

■ We see the question presented to us in this appeal as a quite narrow one. In *Threlkeld v. Commissioner*, 87 T.C. 1294, 1299 (1986), *aff'd*, 848 F.2d 81 (6th Cir. 1988), the entire tax court, in a 15–1 decision, held that the test for determining whether a specific damage award qualified for the § 104(a)(2) exclusion is as follows:

Section 104(a)(2) excludes from income amounts received as damages on account of personal injuries. *Therefore, whether the damages received are paid on account of "personal injuries" should be the beginning and end of the inquiry. To determine whether the injury complained of is personal, we must look to the origin and character of the claim ..., and not to the consequences that result from the injury.*

(emphasis added). In other words, determining whether the § 104(a)(2) exclusion applies requires an examination of the nature of the injury to determine whether the injury and claim are personal and tort-like in nature, and not whether the consequences of the injury resulted in an award of compensatory damages or damages for back pay. *See Pistillo v. C.I.R.*, 912 F.2d 145, 148–49 (6th Cir.1990). Thus, our inquiry is limited to whether injuries resulting from sex discrimination in violation of Title VII are "personal injuries" for the purposes of § 104(a)(2).

Courts have long held that injuries resulting from invidious discrimination, be it on the basis of race, sex, national origin or some other unlawful category, are injuries to the individual rights and dignity of the person. *See, e.g. Goodman v. Lukens Steel Co.*, 482 U.S. 656, 661, 107 S.Ct. 2617, 2621, 96 L.Ed.2d 572 (1986) (race discrimination, challenged under § 1981, is a fundamental injury to the individual rights of the person); *Thompson v. Commissioner*, 866 F.2d 709, 712 (4th Cir.1989) (sex discrimination is an injury to the person); *cf. Wilson v. Garcia*, 471 U.S. 261, 277, 105 S.Ct. 1938, 1947, 85 L.Ed.2d 254 (1985) (analogizing a violation of the Civil Rights Acts of 1871 to a violation of the fourteenth amendment which sounds in tort as an injury to the person); *Tillman v. Wheaton–Haven Recreation Ass'n*, 517 F.2d 1141, 1143 (4th Cir.1975) ("an action brought under statutes forbidding racial discrimination is fundamentally for the redress of a tort."); *Curtis v. Loether*, 415 U.S. 189, 195–96 n. 10, 94 S.Ct. 1005, 1009 n. 10, 39 L.Ed.2d 260 (1974) (analogizing racial discrimination to

a "dignitary tort."). This long-held view of the tort-like nature of the injury resulting from unlawful discrimination has led this court and others to the conclusion that damages resulting from an action for unlawful discrimination are "damages on account of personal injury" for the purposes of § 104(a)(2). *See, e.g. Pistillo v. C.I.R.*, 912 F.2d 145 (6th Cir.1990) (injuries resulting from age discrimination in violation of the Age Discrimination in Employment Act are personal injuries for the purposes of § 104(a)(2)); *Rickel v. Commissioner*, 900 F.2d 655, 662 (3rd Cir.1990) (age discrimination is a tort-like personal injury for the purposes of § 104(a)(2)); *Metzger v. Commissioner*, 88 T.C. 834 (1987), *aff'd without opinion*, 845 F.2d 1013 (3rd Cir.1988) (finding that damages pursuant to settlement agreement reached in sex and national origin discrimination suit based upon 42 U.S.C. §§ 1981, 1983, 1985(3), 1986 and 2000e, et seq. (Title VII) were damages for "personal injury" under § 104).

The government asks us to draw a distinction between injuries resulting from discrimination in violation of Title VII and other forms of discrimination that this and other courts have found to be personal injuries for the purposes of § 104(a)(2). In support of its position, the government argues that Title VII only provides for back pay damages, *Boddy v. Dean*, 821 F.2d 346, 352 (6th Cir.1987) (Title VII does not provide for compensatory or punitive damages), and that the intent of those damages is to make the plaintiff economically whole, *Shore v. Federal Express Corp.*, 777 F.2d 1155, 1158–59 (6th Cir.1985) (Title VII damages are to make plaintiffs whole for past discrimination by restoring the economic position plaintiff would have occupied absent discrimination). Thus, the government argues that since back pay damages simply compensate plaintiffs for income they would have received absent the discrimination, these awards are economic rather than "tort or tort type" damages and therefore, not excludable under § 104. *See Hodge v. Commissioner*, 64 T.C. 616, 620–21 (1975) (damages awarded for back pay in race discrimination suit are not excludable under § 104).

We find the government's position unconvincing because the government misapprehends the proper inquiry for determining excludability under § 104(a)(2). Contrary to the tax court's teaching in *Threlkeld,* the government focuses its analysis on the consequences of a Title VII violation (the payment of back pay for lost wages) rather than the personal nature of the injury (invidious discrimination). Our recent decision in *Pistillo* brings us a considerable distance toward resolution of the question before us. In *Pistillo,* the court considered whether settlement damages awarded in a suit for age discrimination under the ADEA, which sought back pay and reinstatement, were excludable under § 104(a)(2). The *Pistillo* court, reversing the tax court, found that damages awarded under the ADEA were "compensation for the *personal injury* [plaintiff] suffered as a result of his employer's invidious age discrimination." 912 F.2d at 150 (emphasis original). The court held, further, that "[plaintiff's] loss of wages—a substantial nonpersonal consequence of his employer's age discrimination—did not transform the discrimination into a nonpersonal injury." *Id.* Thus, the court held that damages awarded in a settlement agreement under the ADEA were "damages for personal injury" excludable under § 104(a)(2).

Similarly, the court in *Rickel,* in rejecting the government's assertion that discrimination suits which sought damages for lost wages were based in contract rather than in tort as required by § 104, stated:

> [T]he duty of an employer to refrain from discriminating against employees on the basis of their age arises by operation of a statute. Society has made the moral and economic determination that as a matter of law it will not abide such discrimination. Such a duty arises even in the absence of a written employment contract and despite the existence of either contrary terms in such a contract or conflicting common law employment-at-will principles.

900 F.2d at 662. Thus, the *Rickel* court concluded that despite the fact that some of the compensation included in Rickel's

settlement agreement was for back pay, the entire damage award was nonetheless excludable under § 104(a)(2). *Id.* at 664.

The government argues that excluding damages awards which include back pay from gross income for tax purposes will result in unfairness as employees will be better off than they would have been had the discrimination not occurred because the back pay award would not be subject to tax. While the government's position has some logical appeal, we have already addressed this concern in *Pistillo:*

> Given the result we reach today, Pistillo will have less federal tax liability than if he had not suffered age discrimination in the first place. The reality, however, as opposed to the hypothetical, is that Pistillo did suffer invidious age discrimination. Pistillo endured his employers' indignities, insults and age discrimination; suffered a dignitary tort; and was personally injured, ... Pistillo is now entitled to receive federal tax treatment *equal* to that received by the typical tort victim who suffers physical injury and, as a result, receives a settlement award. *See Rickel*, 900 F.2d at 664 ("[T]he successful ADEA plaintiff is being treated no better ... than the typical tort victim who suffers a physical injury. We see no reason to treat one personal injury victim any differently than another.").

*Pistillo*, 912 F.2d at 150 (emphasis original). Thus, a plaintiff who suffers the personal injury of discrimination and loses pay as a consequence will be treated identically to the victim of a physical injury whose damage award which includes lost wages is not taxable despite the fact that those wages would have been taxed had the injury not occurred. The fact that the settlement agreement in the instant case included a clause stating that the agreement was not an admission of discrimination, does not change the nature of the injury of discrimination or the logic of this court's analysis in *Pistillo.*

In sum, *Threlkeld* and its progeny require that for the purposes of § 104(a)(2), this court determine whether the injury is personal and the claim resulting in the damages is tort-like in nature. If the answer is in the affirmative, then that is "the beginning and end of the inquiry." *Threlkeld*, 87 T.C. at 1299. The damages resulting from such a claim are fully excludable under § 104(a)(2). At no point do we inquire into the nature of the damages involved. Rather the narrow scope of our gaze is properly limited to the "origin and character of the claim, ... and not to the consequences that result from the injury." *Threlkeld*, 87 T.C. at 1299. This court in *Pistillo* held that damages resulting from the settlement of an action for age discrimination under the ADEA were fully excludable as "damages on account of personal injury" under § 104(a)(2). The government has not provided, either in its briefs or in oral argument, and this court cannot discern, any principled way to distinguish the injuries arising from a claim for invidious age discrimination, and the claim for invidious sex discrimination before us today, except that these tort claims were brought under different federal statutes. In addition, the government was unable to demonstrate why injuries resulting from sex discrimination were not "personal" while other forms of nonphysical tort injuries were "personal" for the purposes of § 104(a)(2) exclusion. *See, e.g., Threlkeld*, 87 T.C. at 1308, *aff'd* 848 F.2d 81 (6th Cir.1988) (injuries to taxpayer's professional reputation due to a malicious prosecution excludable as personal under § 104(a)(2)); *Roemer*, 716 F.2d at 700 (compensatory damages received in a taxpayer's defamation suit were excludable as personal injuries under § 104(a)(2)); *Byrne v. Commissioner*, 883 F.2d 211, 216 (3rd Cir.1989) (relying on *Bent* and *Roemer* to extend the § 104 exclusion to a retaliatory discharge claim under the Fair Labor Standards Act and a wrongful discharge claim under state law). Thus, we find that suits for unlawful discrimination under Title VII, like suits under the ADEA and other tort type suits, fall within the category of suits for injury to the person and that the damages resulting therefrom are properly excludable under § 104(a)(2).

Therefore, we hold that the withholding of federal taxes from the Title VII settle-

ment damages giving rise to this taxpayer's action was improper. We REVERSE and REMAND for entry of an order consistent with this opinion.

WELLFORD, Senior Circuit Judge, dissenting:

I respectfully dissent from the reversal of the district court's decision in this case. The payments at issue received by plaintiffs should not be excludable from their gross income as determined by the district court.

Plaintiffs in their complaint specifically sought back pay allegedly denied them because of their sex. Plaintiffs' complaint referred at length to schedules of pay and asserted that classes of men allegedly doing work comparable to that done by plaintiffs received more pay for the allegedly comparable work. Presumably, the pay of these men was subject to income tax and FICA withholding. Plaintiffs sought, in short, equality of pay and then demanded back pay from TVA. The subject matter of the suit was pay for work performed, all subject presumably to the gross income definition of 26 U.S.C. § 61(a).

Plaintiffs claim that what they received was not equivalent to payment for services and thus not taxable, but the burden is upon them to show entitlement to an exclusion in light of the nature of their demand for *back pay. Commissioner v. Glenshaw Glass Co.,* 348 U.S. 426, 75 S.Ct. 473, 99 L.Ed. 483 (1955). Plaintiffs claim that what they received was "damages" for "personal injuries," as in the case of *Pistillo v. Commissioner,* 912 F.2d 145 (6th Cir. 1990), rather than otherwise taxable earned income. I.R.C. § 104(a)(2).

*Pistillo* involved a jury award, later converted to settlement, including fees in an age discrimination case under 29 U.S.C. §§ 621–634.[1] The *Pistillo* plaintiffs' claim included (according to jury instructions) "liquidated damages, compensatory dam-

ages," and other benefits claimed to have been lost due to age discrimination. *Pistillo* relied, in part, upon *Wulf v. City of Wichita,* 883 F.2d 842 (10th Cir.1989), a first amendment termination case; on *Bent v. Commissioner,* 835 F.2d 67 (3d Cir. 1987), which was based on a first amendment claim and only partially on a lost wages claim; and on *Roemer v. Commissioner,* 716 F.2d 693 (9th Cir.1983), which dealt with defamation damages. I believe that *Wulf, Bent* and *Roemer* are not comparable to the present sex discrimination lost wages or comparable worth case. I find them clearly distinguishable.

*Wulf* and *Bent,* in the first place, involved *wrongful terminations* based upon free speech considerations, a far cry from the claim in this case which involves no termination and a straightforward wage differential demand. *Roemer* involved a claim for defamation, defined as a personal injury claim under California law. I conclude that it likewise has no applicability to the instant controversy.[2] *Pistillo's* reasoning that an age discrimination award for a termination which arose out of violation of an "individual right" and therefore is not taxable as a "personal injury" extends an exception from income taxation further than any previous case which dealt with an ADEA claim. I would not extend this rationale to a wholesale exemption of a wage benefits distribution attributable to a claimed wage differential as in this controversy.

The struggle to distinguish recoveries for personal injuries from all other recoveries began with the recognition that not all personal injuries are physical. *Hawkins v. Commissioner,* 6 B.T.A. 1023 (1927); *Roemer,* 716 F.2d 693. Even if one accepts a recent inclination of some courts to characterize awards and accessions to wealth as damages for personal injuries rather than income, one must examine carefully the distinctions in those cases from the factual circumstances, as in the case at bar, in

---

1. *Pistillo* reversed a Tax Court decision which held the jury award amount to be taxable based upon substantial authority from other circuits.

2. *Byrne v. Commissioner,* 883 F.2d 211 (3d Cir. 1989), extended the *Bent* and *Roemer* rationale to a retaliatory discharge claim under FLRA, still in no way comparable to the circumstances here.

which the taxpayer obviously recovered amounts which would have been subject to income tax had they come to the taxpayer in the normal course. The majority would now extend the proposition that we look only to see whether the plaintiff has suffered an injury to personal dignity as a basis for a back pay recovery. *See Pistillo*, 912 F.2d at 150.

In *Threlkeld v. Commissioner*, 87 T.C. 1294 (1986), *aff'd*, 848 F.2d 81 (6th Cir. 1988), plaintiff claimed injury to professional reputation as part of a state law claim of malicious prosecution and the injury was measured by reference to lost business. The Tax Court determined that the recovery was due to a personal injury despite its link to economic ability. In reaching its decision the court stated that

> whether the damages received are paid on account of "personal injuries" should be the beginning and end of the inquiry. To determine whether the injury complained of is personal, we must look to the origin and character of the claim and not to the consequences that result from the injury.

87 T.C. at 1299 (citation omitted). The court did *not* say that all claims that include personal injury are necessarily fully about personal injury and therefore excludable from taxable income. It did *not* say that the consequences that flow from an injury are irrelevant to determining a claim's character and origin. To the contrary, the Tax Court in *Threlkeld* stated that the court

> must look to various factors, including the allegations in the ... pleadings, the evidence adduced at trial, a written settlement agreement, and the intent of the payer.... Because of the multitude of situations involving the payment of damages for an allegedly personal injury, the most that can be said is that we will look to all of the facts and circumstances to determine whether the injury is, in fact, personal.

*Id.* at 1306.

The majority in the present case would extend what I feel is a flawed analysis in *Rickel v. Commissioner*, 900 F.2d 655 (3d Cir.1990), and *Pistillo* beyond ADEA, again without critical analysis of the statute at issue. I find the analysis in *Thompson v. Commissioner*, 866 F.2d 709 (4th Cir.1989), to be both logical and compelling:

> After analyzing the statutory scheme [of the Equal Pay Act and Title VII] we conclude that Thompson received the liquidated damages through prosecution of a tort-type claim for personal injuries. We conclude, however, that the claim for back pay was essentially a contractual claim for accrued wages. Thus, the Tax Court correctly held the liquidated damages award excludable under section 104(a)(2), and the award of back pay includable in gross income.
>
> ....
>
> Thompson performed essentially the same work as her male co-workers for which she should have received equal pay. The back pay award was simply recovery for earned, but unpaid, wages which distinguishes her award of back pay from awards for lost wages or lost income in traditional personal injury/tort actions. She received compensation for services rendered whereas a tort plaintiff receives compensation for the inability to earn an income due to the tortious action of a defendant. *Threlkeld v. Commissioner*, ... *Bent v. Commissioner*, 835 F.2d 67 (3d Cir.1987), *Roemer v. Commissioner* ....

*Id.* at 712. This better reasoned analysis of the Fourth Circuit reveals that the term "contract" should be understood in a broad sense to include that which the Third Circuit in *Rickel* sought to exclude by rejecting the term "economic."

In *Metzger*, the Tax Court stated that its earlier decision in *Hodge v. Commissioner*, 64 T.C. 616 (1975), should not be read to imply that all recovery under Title VII is taxable but that the facts should be tested to determine the nature of a claim. 88 T.C. at 858. The court distinguished *Hodge* because the *Hodge* taxpayers received only back pay whereas that was not the case in *Metzger*. The court looked to the language in the settlement agreement, the underlying complaint and the evidence and argu-

ments presented at trial to determine whether the recovery was meant to be back pay. 88 T.C. at 845–46. The court specifically stated that when a settlement agreement is not explicit about the character of a claim that factual evidence of the payor's intent is "most important" to determining the applicability of § 104. *Id.* at 857 (citing *Knuckles v. Commissioner,* 349 F.2d 610 (10th Cir.1965)). It determined that the recovery was not back pay since there was no effort to calculate back pay and the settlement was meant to cover a number of claims not related to back pay.

The difference between the *Metzger* case and the case at bar seems apparent to me. Burke sought back pay in her complaint.[3] Payment under the settlement was linked to wages and taxes were withheld.[4] This is not a case in which back pay is a means of measuring loss due to a tort. Compensation for that loss, if it exists in this case, was not sought and arguably was not available under § 2000e. *See Boddy v. Dean,* 821 F.2d 346, 352 (6th Cir.1987). Rather, this is a case in which the plaintiff "received in settlement [payment that] was includable in gross income because it was intended to compensate [Burke] for lost earnings...." *Threlkeld,* 848 F.2d at 83 (distinguishing *Wolfson v. Commissioner,* 651 F.2d 1228 (6th Cir.1981)). *See also Wolfson* (accepting applicability of clear error analysis to Tax Court determinations of excludability in personal injury cases).

I would AFFIRM the district court.

---

3. The complaint requested an injunction against further discrimination and an "order awarding back pay to all affected female employees ...."

4. The majority opinion finds some significance in conduct, which it describes as (1) TVA not taxing its direct payment to Hutcheson; and (2) not taxing monies left over as undeliverable which were turned over to the union. Each check, however, clearly stated the amount *withheld as taxes* making the payor's intent clear.