Jack R. HAWKINS, Cynthia J. Hawkins, husband & wife, Plaintiffs–Appellees,

v.

UNITED STATES of America, Defendant–Appellant.

No. 93–15828.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 11, 1994.

Decided July 19, 1994.

Gary R. Allen, Edward T. Perelmuter, Tax Div., U.S. Dept. of Justice, Washington, DC, for defendant-appellant.

Kenneth J. Whitehead, Phoenix, AZ, for plaintiffs-appellees.

Before GOODWIN, FERGUSON and TROTT, Circuit Judges.

Opinion by Judge GOODWIN; Dissent by Judge TROTT.

GOODWIN, Circuit Judge:

The government appeals a summary judgment granted in favor of Jack and Cynthia Hawkins ("the taxpayers"). The district court concluded that the taxpayers' punitive damage award was excludable from gross income as "damages received ... on account of personal injury." 26 U.S.C. § 104(a)(2). We reverse.

## I.

The facts are undisputed. In 1979, Cynthia Hawkins crashed the taxpayers' $8,000 car, totaling it. Ms. Hawkins and her hus-

band ("the Hawkinses") filed a claim with their insurer, Allstate Insurance Company ("Allstate"), requesting a replacement car. Allstate agents allegedly pressured the couple into buying an inferior, less expensive replacement car for $6,741, and then failed to equip the new car with certain options. The Hawkinses sued Allstate for breach of good faith and fair dealing (insurance bad faith), ultimately recovering $15,000 in compensatory damages and $3.5 million in punitive damages. *Hawkins v. Allstate Insurance Co.*, 152 Ariz. 490, 733 P.2d 1073, *cert. denied,* 484 U.S. 874, 108 S.Ct. 212, 98 L.Ed.2d 177 (1987).

On their 1988 federal income tax return, the Hawkinses initially reported $2,937,406 of the lawsuit proceeds as gross income, contending that the punitive damages (less attorneys' fees and costs) were taxable, but that the $15,000 compensatory damages were excludable "damages received on account of personal injury or sickness." 26 U.S.C. § 104(a)(2). They then filed an amended return, claiming that the punitive damages were also excludable under § 104(a)(2) and requesting a refund of $793,277. The IRS disallowed the refund, and the Hawkinses filed this refund action in the district court. On cross-motions for summary judgment, the district court found for the Hawkinses, ruling that the punitive damages were excludable. The government timely appealed.

## II.

■ Viewing the evidence in the light most favorable to the non-moving party, we review de novo to determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Stevens v. Moore Business Forms, Inc.*, 18 F.3d 1443, 1446 (9th Cir.1994). The case presents no genuine issues of material fact and summary judgment was appropriate. However, we disagree with the district court's interpretation of the relevant law, and hold that the

taxpayers' punitive damages were not excludable under § 104(a)(2) (1988).

## III.

■ For taxation purposes, gross income includes "all income from whatever source derived." 26 U.S.C. § 61(a). An accession to wealth, such as the Hawkinses' punitive damage award, is presumed to be taxable income, unless the taxpayer can demonstrate that it fits into one of the Tax Code's specific exemptions. *Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426, 430, 75 S.Ct. 473, 476, 99 L.Ed. 483 (1985). The Hawkinses contend that their punitive damage award fits into § 104(a)(2), which provides:

> **§ 104. Compensation for injuries or sickness**
>
> … [G]ross income does not include— …
> (2) the amount of any damages received (whether by suit or agreement and whether as lump sums or as periodic payments) *on account of personal injuries or sickness;*

26 U.S.C. § 104(a)(2) (1988) (emphasis added).[1] IRS implementing regulations define "damages" as amounts received "through prosecution of a legal suit or action based upon tort or *tort-type rights.*" 26 C.F.R. § 1.104–1(c) (1993) (emphasis added).

The parties agree that, under Arizona law, the Hawkinses' bad faith lawsuit was a tort-type action, *Rawlings v. Apodaca*, 151 Ariz. 149, 726 P.2d 565, 567 (1986); *Noble v. National American Life Insurance Co.*, 128 Ariz. 188, 624 P.2d 866, 868 (1981), and that the Hawkinses suffered "personal injuries" as a result of Allstate's conduct. *Bates v. The Superior Court of the State of Arizona, In and For the County of Maricopa*, 156 Ariz. 46, 749 P.2d 1367, 1370 (1988) (mental distress suffered as a result of an insurance company's bad faith refusal to pay a legitimate claim can qualify as a personal injury); *Lange v. Penn Mutual Life Ins. Co.*, 843 F.2d 1175, 1178 (9th Cir.1988). The government therefore concedes that the Hawkinses' *compensatory* damages are excludable "dam-

---

1. Congress has since amended § 104(a)(2). *See* Pub.L. No. 101–239, § 7641(a), 103 Stat. 2379 (1989) (providing that punitive damages recovered in non-physical injury cases are not excludable from gross income). This amendment applies to amounts received after July 10, 1989 and therefore does not apply to the Hawkinses' award.

ages received ... on account of personal injury." § 104(a)(2).

The parties also agree that the Hawkinses' compensatory damages completely covers the Hawkinses' actual injuries, including their two-week loss of the family car, out-of-pocket losses of less than $1,000, and attendant emotional distress. The Hawkinses concede that the punitive damage award bears no relationship to their injuries and represents pure gain.

Thus, the only dispute is whether the punitive damages, despite their tangential relationship to any actual injury, are excludable from gross income under § 104(a). We must decide whether § 104(a) excludes all damages received in a tort-like lawsuit, or only those damages which have some compensatory purpose. The government contends that noncompensatory, punitive damage awards such as the Hawkinses' are not received "on account of personal injuries," but on account of the tortfeasor's egregious conduct. In the government's view, § 104(a)(2) excludes only those damages which purport to compensate the taxpayer for her injuries. The Hawkinses, in contrast, contend that, under the 1988 version of § 104(a)(2), all damages received in a tort-like lawsuit are excludable, regardless of their purpose.

■ While the Hawkinses' position draws some support from the IRS's vacillation on the issue,[2] we believe the government's current interpretation is more consistent with § 104(a)'s title and purpose, as well as with the rule that exemptions must be narrowly construed in favor of taxation. We therefore join several other courts in concluding that § 104(a)(2) does not exclude noncompensatory punitive damages. *See Reese v. Commissioner,* 24 F.3d 228, (Fed.Cir.1994); *Commissioner v. Miller,* 914 F.2d 586 (4th Cir.1990); *Estate of Wesson v. United States,* 843 F.Supp. 1119 (S.D.Miss.1994); *Kemp v. Commissioner,* 771 F.Supp. 357, 359 (N.D.Ga. 1991).

### A.

Unlike the district court, we are not convinced that the "plain meaning" of § 104(a)(2) compels exclusion of punitive damages. Rather, as the Fourth and Federal Circuits have noted, § 104(a)(2) is "ambiguous." *Reese,* 24 F.3d at 230; *Miller,* 914 F.2d at 589–90. "Damages received on account of personal injury" could mean all damages recovered in a personal injury lawsuit, or, it could mean only those damages which purport to compensate the taxpayer for her personal injuries. *Id.* Punitive damages such as the Hawkinses, which do not purport to compensate the taxpayer for personal injuries and which bear no relation to the severity of the taxpayer's injuries, are not necessarily awarded "on account of" personal injury; rather, they are awarded "on account of" the tortfeasor's egregious conduct. *Id.*[3]

**2.** In the last 30 years, the IRS has twice reversed its opinion on whether § 104(a)(2) excludes punitive damages awarded in a personal injury suit. *Compare* Rev.Rul. 58–418, 1958–2 C.B. 18 (1958) (punitives awarded in a libel suit not excludable) *with* Rev.Rul. 75–45, 1975–1 C.B. 47 (1975) (any damages, whether compensatory or punitive, received on account of personal injuries or sickness are excludable) and Rev.Rul. 84–108, 1984–2 C.B. 32 (1984) (punitive damages in a wrongful death suit must be included in gross income). The Tax Court has also consistently held that punitives are excludable. *See Horton v. Commissioner,* 100 T.C. 93, 1993 WL 28557 (1993), appeal pending 93–1929 (6th Cir.); *Miller v. Commissioner,* 93 T.C. 330, 1989 WL 104238 (1989), rev'd, 914 F.2d 586 (4th Cir.1990).

**3.** The dissent argues that § 104(a)(2) is not ambiguous because (1) a litigant cannot receive punitive damages unless she has suffered personal injury; and (2) because the statute refers to "any damages." While the dissent's attempt to make sense of the statute is commendable, we respectfully disagree.

First, even if punitive damage awards cannot be awarded "but for" personal injury, the phrase "on account of" does not necessarily mean "but for causation." *Id.* Rather, "on account of" could mean what the *Miller* court called "sufficient causation"—i.e. all damages to which a litigant is entitled because of her injuries, but not those which serve solely to punish the wrongdoer.

The section's reference to "any damages" is no more illuminating. Given the variety of compensatory damages available in tort actions—including specific or actual damages, general damages, loss of consortium damages, emotional distress damages, etc.—"any damages" could indicate an intent to make all of these various kinds of compensatory damages excludable. The word "any" does not, as the dissent suggests, necessarily indicate an intent to make punitive damages excludable.

We also disagree with the Hawkinses' characterization of the case law as "consistently h[olding] that the inquiry under § 104(a)(2) is limited to an examination of the nature of the taxpayer's claim or injury." Appellees Br. at 15 (citing *United States v. Burke*, —— U.S. ——, ——, 112 S.Ct. 1867, 1870, 119 L.Ed.2d 34 (1992); *Redfield v. Insurance Co. of North America*, 940 F.2d 542 (9th Cir.1991); *Threlkeld v. Commissioner*, 848 F.2d 81 (6th Cir.1988)). While these cases did examine the nature of the taxpayers' claim or injury to determine whether or not the damages at issue were recovered for personal injury, they did not hold that whenever the underlying claim is tort-like, all damages are excludable.

■ In fact, the Federal Circuit recently rejected the Hawkinses' exact argument and distinguished precisely these cases. *Reese*, 24 F.3d at 234. As the *Reese* court noted, *Burke* held only that damages awarded under the 1991 version of Title VII were not excludable from gross income because the statute did not "evidence[ ] a tort-like conception of injury and remedy." —— U.S. at ——, 112 S.Ct. at 1873. The *Burke* taxpayers had not received punitive damages, and the Court did not address the excludability of punitive damages. Rather, the Court mentioned punitive damages only because the Court felt that the availability of punitive damages indicates the nature of the underlying cause of action: Since punitive damages are traditionally available only in personal injury-type actions, the availability of punitives suggests that the underlying cause of action is "tort-like" within the meaning of § 104(a). Contrary to the dissent's argu-

ments, however, nothing about this comment implies that punitive damages *themselves* are excludable from gross income. Punitive damages may be an indicia of a tort-like cause of action without themselves being damages received on account of personal injury.

Nor did the Court indicate that, if the underlying cause of action is tort-like, all damages, regardless of their purpose, are excludable. While the Court "agree[d] with the Court of Appeals' analysis insofar as it focused, for purposes of § 104(a)(2), on the nature of the claim underlying ... [the taxpayers'] damages award," *Burke*, —— U.S. at ——, 112 S.Ct. at 1872, the Court did not state that courts should look exclusively at the nature of the claim underlying the damage award. The Court's alleged failure to "mention any additional requirements for exclusion under § 104(a)(2)" means little, given that the Court concluded that the taxpayers' underlying cause of action was not "tort-like." The Court had no occasion to discuss any such additional requirements.

The Hawkinses' other cases are similarly unpersuasive. *Redfield*, 940 F.2d 542, addressed ADEA liquidated damages, which serve both to compensate and to punish; *Threlkeld*, 848 F.2d 81, addressed damages for loss of reputation, which similarly have a compensatory purpose. Finally, *Roemer v. Commissioner*, 716 F.2d 693 (9th Cir.1983) relied on a 1975 Revenue Ruling which has since been overruled. *See Miller*, 914 F.2d at 591 (distinguishing *Roemer* on this basis).[4] Thus, contrary to the Hawkinses' arguments, no controlling authority[5] contradicts the gov-

---

Finally, the dissent's claim that "[t]he language of § 104(a)(2) simply does not permit a distinction between compensatory and punitive damages" ignores both § 104(a)'s title, "Compensation for Injury and Sickness," and the longstanding rule that exclusions to income are to be construed narrowly in favor of taxation. *See United States v. Centennial Savs. Bank*, 499 U.S. 573, 583–84, 111 S.Ct. 1512, 1518–19, 113 L.Ed.2d 608 (1991); *Commissioner v. Jacobson*, 336 U.S. 28, 69 S.Ct. 358, 93 L.Ed. 477 (1949).

**4.** In contrast to the dissent, we see no evidence in *Roemer* that the court "independently reviewed the text of the statute." Nor are we accusing the *Roemer* court of "blindly following the Internal Revenue Service's pronouncements

on the subject." Rather, we think the court reasonably and appropriately deferred to the IRS's interpretation of § 104(a)(2), under the well-settled rule that an agency's interpretation of a statute is entitled to deference unless it contradicts the statute's plain meaning. *Sullivan v. Everhart*, 494 U.S. 83, 88–89, 110 S.Ct. 960, 963–65, 108 L.Ed.2d 72 (1990). We do not dispute that the dissent's interpretation of § 104(a)(2) is reasonable, only that it is compelled.

**5.** The Tax Court, however, continues to hold that punitive damages are excludable, *Horton v. Commissioner*, 100 T.C. 93, 1993 WL 28557 (1993), *appeal pending*, 93–1929 (6th Cir.). We find the

ernment's assertion that, in order to prove excludability under § 104(a)(2), the taxpayer must show both (1) that the damages were recovered in a tort-like suit and (2) that the damages were received on account of the personal injury.

■ The Hawkinses' reliance on the 1989 amendments to § 104(a)(2) is similarly unconvincing. As the Hawkinses emphasize, Congress has since amended § 104(a)(2) to provide that the exclusion "shall not apply to any punitive damages in connection with a case not involving physical injury or physical sickness." Omnibus Budget Reconciliation Act of 1989, Pub.L. No. 101–239, § 7641, 103 Stat. 2106, 2379 (1989). While this amendment applies only to damages received after July 10, 1989, and therefore does not affect the Hawkinses' award, the Hawkinses nonetheless contend that we should read the 1989 version of § 104(a)(2) in light of this amendment. According to the Hawkinses, Congress's decision to amend the exclusion to exempt punitive damages received in non-personal injury cases implies that, under the previous version of § 104(a), such punitive damages were excludable—otherwise Congress would not have amended the statute.

■ We disagree. Congress may amend a statute simply to clarify existing law, to correct a misinterpretation, or to overrule wrongly decided cases. Thus, an amendment to a statute does not necessarily

indicate that the unamended statute meant the opposite. Moreover, as the Supreme Court has emphasized, "the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one." *United States v. Price,* 361 U.S. 304, 313, 80 S.Ct. 326, 332, 4 L.Ed.2d 334 (1961); *see also United States v. Texas,* — U.S. —, —, 113 S.Ct. 1631, 1635 n. 4, 123 L.Ed.2d 245 (1993). The interpretive value of an amendment to a statute is particularly dubious where, as here, the amendment was enacted long after the original provision. *Rainwater v. United States,* 356 U.S. 590, 593, 78 S.Ct. 946, 948–49, 2 L.Ed.2d 996 (1958). At the time of the proposed amendment, several cases had recently held that § 104(a)(2) excludes damages recovered in cases involving employment discrimination and injury to reputation, *Threlkeld,* 848 F.2d at 83–84; *Roemer,* 716 F.2d at 700, and some had even held that punitive damages awarded in such cases are excludable. *Miller,* 93 T.C. 330, 1989 WL 104238 (1989), *rev'd,* 914 F.2d 586 (4th Cir.1990); *Roemer,* 716 F.2d at 700 (relying on a 1975 Revenue Ruling which has since been overruled). That Congress elected to overrule such cases does not prove that, prior to Congress's action, the statute meant the opposite.[6] Rather, Congress may have amended the law simply to clarify existing law, or to overrule these recently decided cases.[7]

*Horton* dissent's arguments more persuasive than the majority's.

**6.** In fact, the legislative history of the 1989 amendments indicates that Congress was not concerned with punitive damages, but with non-physical injury cases. The original House of Representatives bill would have made all damages received on account of non-physical injuries fully taxable. H.R.Rep. No. 101–247, 101st Cong., 1st Sess. at 1354–55, *reprinted in* 1989 U.S.C.C.A.N. at 1906, 2824–25. The decision to address only punitive damages was a compromise reached after the Senate declined to pass the House bill. H.R.Conf.Rep. No. 101–386, 101st Cong., 1st Sess. at 623, *reprinted in* 1989 U.S.C.C.A.N. at 3225–26. Even if the amendments indicate that, at the time Congress was debating the issue, it thought that § 104(a)(2) applied to punitive as well as compensatory damages; they do not indicate that Congress gleaned the true intent of previous Congresses, only that Congress was aware that courts had recently so interpreted the section.

**7.** The dissent correctly points out, of course, that Congress probably did not intend to broaden § 104(a)(2) and, as currently drafted, the statute may imply that punitive damages in physical injury cases are excludable. However, we do not believe that the only consistent explanation of these facts is that before 1989 all punitive damages received in personal injury cases were excludable from gross income. Rather, even if the 1989 amendment makes punitive damages received in physical injury cases excludable, this implication could be inadvertent. Or, since Congress simply did not address punitive damages received in physical injury cases and was concerned primarily with non-physical injury cases, it may have been "deferring to the courts on this issue." Dodge, *Taxes and Torts,* 77 Cornell L.Rev. No. 1, 143 & n. 4 (1992). Given our belief that excluding punitive damages is inconsistent with § 104(a)(2)'s title and purpose, we doubt that Congress intended to exclude any noncompensatory punitive damages. However, we express no opinion on the excludability of

■ Thus, neither § 104(a)(2)'s plain language, interpretive case law, or recent amendments indicate whether noncompensatory punitive damages such as the Hawkinses' are excludable. We therefore "look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy." *Crandon v. United States,* 494 U.S. 152, 158, 110 S.Ct. 997, 1001, 108 L.Ed.2d 132 (1990).

**B.**

Both § 104's title, "Compensation for Sickness and Injury," and its history suggest that § 104(a)(2) was enacted to exclude damages which compensate a taxpayer for injuries. *See, e.g.,* S.Rep. No. 97–646, 97th Cong., 2d Sess., *reprinted in* 1982 U.S.C.C.A.N. 4580, 4582 (describing § 104 as excluding certain types of compensation payments). We have previously recognized that "[d]amages paid for personal injuries are excluded from gross income because they make the taxpayer whole from a previous loss of personal rights—because, in effect, they restore a loss to capital." *Starrels v. Commissioner,* 304 F.2d 574, 576 (9th Cir.1962); *see also* 1 B. Bittker, *Federal Taxation of Income, Estates and Gifts,* ¶ 13.1.4 (1981) ("The rationale for § 104(a)(2) ... is presumably that the recovery does not generate a gain or profit but only makes the taxpayer whole by compensating for a loss.").

This rationale justifies excluding the Hawkinses' compensatory damages. It also justifies excluding damages awards which purport *both* to compensate and to punish—such as the liquidated damages awarded in age discrimination cases. *See Miller,* 914 F.2d at 591 (distinguishing between punitive damages which serve *no* compensatory purpose and liquidated damages which serve both a deterrent and compensatory purpose); *Bennett v. United States,* 30 Fed.Cl. 396, 401 (1994) (in contrast to exclusively noncompensatory punitive damages, ADEA liquidated damages have a compensatory purpose and are therefore excludable); *Downey v. Commissioner,* 100 T.C. 634, 1993 WL 231740 (1993) (ADEA liquidated damages, which

serve both to compensate for intangible injuries and to punish, are excludable); *cf. Threlkeld,* 848 F.2d at 84 (In a defamation suit alleging injury to reputation, "[a]ll income in compensation of that injury is excludable under § 104(a)(2)").

However, purely punitive awards, such as the Hawkinses', "are not intended to compensate the injured party, but rather to punish the tort-feasor whose wrongful action was intentional or malicious, and to deter him and others from similar extreme conduct." *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 266, 101 S.Ct. 2748, 2759, 69 L.Ed.2d 616 (1981); *see also International Bhd. of Elec. Workers v. Foust,* 442 U.S. 42, 48, 99 S.Ct. 2121, 2125–26, 60 L.Ed.2d 698 (1979) ("Punitive damages are not compensation for injury. Instead, they are private fines levied by civil juries to punish reprehensible conduct and to deter its future occurrence.") (internal quotations and citations omitted).

The Hawkinses do not contend that their punitive award has any compensatory purpose whatsoever. They concede that the $15,000 compensatory damage award completely covers their actual injuries, including the two-week deprivation of the family car, their out-of-pocket losses totalling less than $1,000, and their emotional distress. The additional $3.5 million in punitives were awarded not because the *Hawkinses* had suffered severe injuries but because Allstate's conduct had injured numerous *other* people. *Hawkins,* 733 P.2d at 1084–85 (upholding the award because of Allstate's wealth, pattern of similar misconduct, and the potential harm to innumerable claimants).

Whatever combination of policy or administrative convenience justifies giving the entire proceeds of Allstate's alleged bad faith to the Hawkinses—rather than distributing it among Allstate's other victims or donating it to the most deserving charity—the rationale (if any) has nothing to do with restoration of lost capital. The $3.5 million does not compensate the Hawkinses for any injury, economic, intangible or otherwise. It is a pure windfall, as much an accession to wealth as a

punitive damages received after 1989 in physical injury cases, as the issue is not before us. Like

the dissent, we hope that Congress will shortly clear up the issue.

successful lottery ticket or a game show winnings. The Hawkinses have not been made whole; they have won the litigation lottery.

■ In such circumstances, the restoration of capital rationale underlying § 104(a) is simply inapplicable. We see no valid reason to exempt a pure gain such as the Hawkinses' punitive award from taxation, and we doubt that Congress intended such a result.[8] Rather, construing § 104(a)(2) narrowly in favor of taxation, as all exemptions must be construed, *United States v. Centennial Savs. Bank*, 499 U.S. 573, 583–84, 111 S.Ct. 1512, 1518–19, 113 L.Ed.2d 608 (1991); *Commissioner v. Jacobson*, 336 U.S. 28, 69 S.Ct. 358, 93 L.Ed. 477 (1949), we find that the exemption does not apply to punitive damages which bear no relationship to actual injuries, do not even purport to compensate the victim for actual losses, and cannot rationally be characterized as anything but a windfall. Such awards are not received "on account of" personal injuries.

The judgment of the district court is REVERSED and the case is REMANDED to the district court with instructions to enter judgment in favor of the government.

TROTT, Circuit Judge, dissenting:

Attempting to provide some coherence to this muddled area of the law, the majority offers the following principle: damages are excludable from gross income under § 104(a)(2) if they constitute a restoration of capital. Because punitive damages are designed to punish the tortfeasor, not compensate the injured party, the majority concludes punitive damages are taxable. Although I agree that the majority's restoration of capital rule may make sense as a matter of policy, I don't think the text of § 104(a)(2), its legislative history, or the case law can be squared with the majority's interpretation.

A. Section 104(a)(2) provides that gross income does not include "the amount of *any damages* received . . . on account of personal injuries or sickness." (emphasis added). As

the Tax Court observed, "any damages" suggests "all damages." *Miller v. Commissioner*, 93 T.C. 330, 338, 1989 WL 104238 (1989), *rev'd*, 914 F.2d 586 (4th Cir.1990); *see also Horton v. Commissioner*, 100 T.C. 93, 95, 1993 WL 28557 (1993). If Congress intended to exclude only compensatory damages from gross income, it certainly could have made that distinction explicit. The language of § 104(a)(2) simply does not permit a distinction between compensatory and punitive damages.

The majority, joining the Fourth and Federal Circuits, asserts the provision is ambiguous. *See Reese v. United States*, 24 F.3d 228 (Fed.Cir.1994); *Miller*, 914 F.2d at 589–90. I disagree. The majority claims: " 'Damages received on account of personal injury' could mean all damages received in a personal injury lawsuit, or, it could mean only those damages which purport to compensate the taxpayer for such injuries." But the majority passes over the fact that the word "any" precedes "damages." I think the Tax Court's conclusion that the language was unambiguous, permitting no distinction between compensatory and punitive damages, is a sound construction of the statute. *See Horton*, 100 T.C. at 95, 1993 WL 28557; *Miller*, 93 T.C. at 338, 1989 WL 104238.

The Tax Court decisions were nearly unanimous—*Miller* was a 15 to 2 decision and *Horton* was a 16 to 3 decision. Although we review the Tax Court's conclusions of law de novo, we should proceed cautiously when reversing a position the Tax Court carefully considered and accepted by an overwhelming majority on two separate occasions. Similarly, the majority lightly glosses over our decision in *Roemer v. Commissioner*, 716 F.2d 693 (9th Cir.1983). In *Roemer*, we held punitive damages were excludable "where there has been a personal injury." *Id.* at 700. Under *Roemer*, taxpayers clearly win this case. The majority contends *Roemer* no longer controls because the court relied upon a 1975 Revenue Ruling which has since been overruled. Presumably, however, the *Roemer* court independently reviewed the text of the statute and did not blindly follow the

---

**8.** *See also Reese*, 24 F.3d at 231 (emphasizing that all of § 104(a)'s other enumerated exemptions "encompass only the replacement of losses resulting from injury or sickness"); *Miller*, 914

F.2d at 590 (extending § 104(a)(2) to "situations in which a plaintiff's damages do not serve to make a plaintiff whole . . . runs afoul of the statute's purpose.").

Internal Revenue Service's pronouncements on the subject. Furthermore, the Service's flip-flop on the issue, *compare* Rev.Rul. 75–45, 1975–1 C.B. 47 (punitive damages not taxable) *with* Rev.Rul. 84–108, 1984–2 C.B. 32 (punitive damages taxable), undermines its claim that *now* it really knows what § 104(a)(2) means.

The majority believes § 104(a)(2) requires the taxpayer to prove both (1) the damages were recovered in a tort-like suit and (2) the damages were received on account of personal injury. The majority then concludes punitive damages are not received on account of personal injury because they do not compensate for personal injury, nor do they bear any relationship to actual injuries. Most jurisdictions, however, require some amount of actual damage before punitive damages are available. *Miller,* 93 T.C. at 339, 1989 WL 104238. I think it's reasonable to conclude that punitive damages are received on account of personal injury because punitive damages are not available unless a personal injury has occurred. Therefore, even under the majority's test, punitive damages in a personal injury lawsuit should be excludable under § 104(a)(2).

B. Instead of the majority's two-part test, however, I would adopt the Tax Court's approach:

> The beginning and end of the inquiry should be whether the damages were paid on account of "personal injuries." This inquiry is answered by determining the nature of the underlying claim. Once the nature of the underlying claim is established as one for personal injury, any damages received on account of that claim, including punitive damages, are excludable.

*Horton,* 100 T.C. at 96, 1993 WL 28557.

Like the Tax Court, I believe the Supreme Court's opinion in *United States v. Burke,*

— U.S. ——, 112 S.Ct. 1867, 119 L.Ed.2d 34 (1992), essentially adopted this method of analysis. The Sixth Circuit had held in *Burke* that

> *Threlkeld [v. Commissioner,* 87 T.C. 1294, 1986 WL 22061 (1986), aff'd 848 F.2d 81 (6th Cir.1988) ] and its progeny require that for the purposes of § 104(a)(2), this court determine whether the injury is personal and the claim resulting in the damages is tort-like in nature. If the answer is in the affirmative, then that is "the beginning and end of the inquiry." The damages resulting from such a claim are fully excludable under § 104(a)(2).

*Burke v. United States,* 929 F.2d 1119, 1123 (6th Cir.1991). Although the Supreme Court reversed the Sixth Circuit's holding that Title VII claims were tort-like in nature, the Court expressly adopted the Sixth Circuit's focus on the nature of the underlying claim: "We thus agree with the Court of Appeals' analysis insofar as it focused, for purposes of § 104(a)(2), on the nature of the claim underlying ... [the taxpayers'] damages award." *Burke,* —— U.S. at ——, 112 S.Ct. at 1872. The majority tries to finesse this reasoning by noting the *Burke* Court did not directly consider whether punitive damages were excludable. But the import of the Court's analysis is clear. The focus should be on the nature of the underlying claim. The *Burke* Court did not mention any additional requirements for exclusion under § 104(a)(2).[1]

There is also another way in which *Burke* supports the conclusion that punitive damages are excludable from gross income. The Court described the availability of punitive damages as one of the indicia of traditional tort liability. *Id.* The Court then relied upon the unavailability of punitive damages

---

1. The decision in *O'Gilvie v. United States,* 92–2 USTC ¶ 50,567, 1992 WL 223847 (D.Kan.1992), construed *Burke* in a similar vein. In *O'Gilvie,* the district court originally held punitive damages in a wrongful death suit were not excludable from gross income, relying on the Fourth Circuit's decision in *Miller.* However, the district court reversed its decision upon reconsideration after *Burke.* The court stated:

> In our previous order, this court focused on the nature of the punitive damage award itself, rather than the nature of the underlying claim. In light of *Burke,* we believe our focus was misplaced. The Supreme Court's opinion makes clear that the proper inquiry for purposes of § 104(a)(2) is on the nature of the claim underlying the taxpayers' damages award.

*Id.* at 85, 974–75, 1992 WL 223847.

in a Title VII case to hold that Title VII does not redress a tort-like personal injury. *Id.* at ——, 112 S.Ct. at 1873. The Supreme Court stated that "the concept of a 'tort' is inextricably bound up with remedies," including punitive damages. *Id.* at ——, 112 S.Ct. at 1872 n. 7. Because punitive damages are one of the primary indicia of a personal injury claim, I believe it follows that punitive damages are received "on account of personal injury." *Horton,* 100 T.C. at 99, 1993 WL 28557. To conclude otherwise, as the majority does, is to say that although the availability of punitive damages makes the claim tort-like, rendering the compensatory damages excludable under § 104(a)(2), the punitive damages themselves are unrelated to the personal injury and should be taxable. I am reluctant to reach such an illogical conclusion.

Because everyone agrees that the Hawkinses' bad-faith lawsuit against Allstate was a tort-type claim and that they suffered personal injury, I believe the punitive damages must be excludable.

C. The 1989 amendment to § 104 further supports my conclusion. The 1989 amendment provided that § 104(a)(2) "shall not apply to any punitive damages in connection with a case not involving physical injury or physical sickness." Omnibus Budget Reconciliation Act of 1989, Pub.L. No. 101–239, § 7641, 103 Stat. 2106, 2379.[2] Thus, if the Hawkinses recovered punitive damages for their bad-faith insurance claim after 1989, the punitive damages would be taxable because their personal injuries were not physical. The Hawkinses contend, quite reasonably, that the amendment suggests *all* punitive damages received before 1989 are not taxable. The majority rejects this argument. The majority believes that just because Con-

gress in 1989 thought punitive damages were excluded from taxation by § 104(a)(2) doesn't necessarily mean that Congress in 1918 intended § 104(a)(2) to encompass punitive damages.

I agree Congress's interpretation in 1989 may not be dispositive, but it certainly is relevant. The majority's inability to harmonize the original statute with the amended statute troubles me because the majority's construction leads to peculiar results. I believe we must start with the premise that punitive damages received after 1989 in cases of physical injury or sickness will be excludable from gross income. *See Burke,* —— U.S. at ——, 112 S.Ct. at 1871 n. 6 ("Congress amended § 104(a) to allow the exclusion of punitive damages only in cases involving 'physical injury or physical sickness.' ").[3] My position offers a consistent explanation of both the pre–1989 and post–1989 law. Before 1989, all punitive damages received in personal injury cases were excludable from gross income. After Congress's narrowing of the exclusion in 1989, only punitive damages received in personal injury cases involving physical injury or sickness were excludable.

By contrast, the majority is unable to offer a satisfactory explanation of the 1989 amendment. The majority suggests that *all* punitive damages, both before and after 1989, must be taxable. After all, punitive damages are just as much of a windfall in a physical injury case as a nonphysical injury case. In both cases, the punitive damage award does not compensate the injured party for any loss—rather it's designed to punish or deter the tortfeasor. Unfortunately, this conclusion means that Congress's 1989 amendment to § 104 had no effect because punitive damages were already taxable! Moreover, if

---

**2.** The 1989 amendment only applies to "amounts received after July 10, 1989, in taxable years ending after such date," unless the amounts were received "under any written binding agreement, court decree, or mediation award in effect on (or issued on or before) July 10, 1989." *Id.* Here, the Hawkinses' apparently received payment during 1988, thus, the 1989 amendment does not literally apply. Nevertheless, any construction of § 104(a)(2) should take into account Congress's latest interpretation and modification of the statutory scheme.

**3.** Commentators overwhelmingly agree with this interpretation of the 1989 amendment. *See* Arthur W. Andrews, *The Taxation of Title VII Victims After the Civil Rights Act of 1991,* 46 Tax Law. 755, 766 (1993); Mark Wright Cochran, *1989 Tax Act Compounds Confusion over Tax Status of Personal Injury Damages,* 49 Tax Notes 1565, 1567 (1990); Margaret Henning, *Recent Developments in the Tax Treatment of Personal Injury and Punitive Damage Recoveries,* 45 Tax Law. 783, 801 (1992); David G. Jaeger, *Taxation of Punitive Damage Awards: The Continuing Controversy,* 57 Tax Notes 109, 114 (1992).

Congress wanted to clarify that all punitive damages were taxable, why did the amendment create a distinction between physical and nonphysical injury cases?

One way to avoid the absurdity of construing the 1989 amendment as meaningless would be to argue that the amendment made punitive damages awarded in physical injury cases after 1989 not taxable when previously they were taxable. But then, instead of narrowing the § 104(a)(2) exclusion, one would have to conclude that Congress actually intended its 1989 amendment to broaden the § 104(a)(2) exclusion. I don't think that interpretation is tenable. If Congress wanted to broaden the exclusion, it could simply have amended § 104 to read: Punitive damages in cases involving physical injury or sickness are excludable. But Congress didn't do that.[4]

I understand this case does not involve a post–1989 punitive damages award. However, I think it's important that we consider the effect of our analysis on subsequent cases, especially when all future cases will be decided under the amended statute. The rule the majority announces—damages representing a windfall are taxable—will undoubtedly be cited in support of the proposition that *all* punitive damages are taxable. This court will then have to chose between rendering the 1989 amendment meaningless or improperly construing the amendment as expanding the § 104 exclusion. My interpretation of § 104(a)(2) avoids that dilemma.

D. The majority tries to rationalize the § 104(a)(2) exclusion in terms of a return of capital theory. I wish it were that simple. The majority's rationale makes a lot more sense than the scheme Congress has devised, but we're bound by the statute and the case law.

The return of capital theory has been widely criticized as a means of explaining the § 104(a)(2) exclusion. *See, e.g., Downey v. Commissioner*, 97 T.C. 150, 159, 1991 WL 140900 (1991), *supplemental opinion*, 100

T.C. 634, 1993 WL 231740 (1993); *Cochran, supra*, at 1573; *Henning, supra*, at 796; Robert J. Henry, *Torts and Taxes, Taxes and Torts: The Taxation of Personal Injury Recoveries*, 23 Hous.L.Rev. 701, 725 (1986). For example, suppose the Hawkinses are injured in an automobile accident and, as a result, can't work for two weeks. If they receive compensatory damages equal to two weeks' lost earnings, the damages would clearly be excludable under § 104(a)(2). But haven't they been made more than whole? After all, if they had worked during those two weeks, they would have been required to pay taxes on their wages. But because of the injury, they received more money than if they had worked. Thus, compensatory damages, like punitive damages, can represent a windfall in addition to a return of capital. Furthermore, it's impossible to explain, based on the return of capital theory, why punitive damages in physical injury cases after 1989 are not taxable.

The return of capital theory is closely related to the concept of basis in tax law. If I buy a property for $100 and sell it for $150, my $50 gain is taxable. My $100 basis, or return of capital, is not. *See* 26 U.S.C. §§ 1001, 1011–1012. But what is a person's basis in his or her own body? Should we keep track of how much money is spent on improving the human body to calculate each person's basis? Obviously, this would be impractical, but how else can we separate return of capital from windfall? *See generally* J. Martin Burke & Michael K. Friel, *Tax Treatment of Employment–Related Personal Injury Awards: The Need for Limits*, 50 Mont.L.Rev. 13, 42 (1989).

The majority tries to impose some logic and commonsense on § 104(a)(2). Despite their efforts, I fear they might sow more confusion than clarification. Congress should straighten out this mess, but until they do, we must do our best to apply the statute as it is written and as we believe Congress intended. We cannot contradict

---

4. As one commentator observed:

    To argue that unamended section 104 does not exclude any punitive damages would mean that the amendment has the effect of broadening the statute to cover punitive damages received for physical injury. If this had been Congress' intent, the amendment would likely

have been drafted in a positive manner and stated that punitive damages received for physical injury are excludable from income. The legislative history behind the amendment clearly shows that the intent was to limit the scope of the language found in section 104. Jaeger, *supra*, at 114.

the statute's plain language in an effort to impose order in the sometimes-chaotic world of the tax code.