T.C. Memo. 1997-158


UNITED STATES TAX COURT


MICHAEL J. FITZPATRICK, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 9269-94.                    March 31, 1997.


During 1981 and 1982, P was a loan officer at Bank
of New York.  P accepted money from the Bank's clients
in order to approve or modify loans.  In <u>Fitzpatrick v.
Commissioner</u>, T.C. Memo. 1995-548, the Court decided
that P, because he had been convicted of tax evasion
under sec. 7201, I.R.C., for the years 1981 and 1982,
was collaterally estopped from denying his
participation in a bribery scheme and from denying that
some part of the underpayment of his income tax was due
to fraud for purposes of sec. 6653(b), I.R.C., for each
of those taxable years.

<u>Held</u>:  P's 1981 and 1982 gross income includes the
payments he received from clients in those years.

<u>Held</u>, <u>further</u>, P is liable for the additions to tax
under sec. 6653(b), I.R.C., for 1981 and 1982, and for
purposes of sec. 6653(b)(2), as in effect for 1982, the
addition to tax applies to the entire amount of unreported
income he received in 1982.

Michael J. Fitzpatrick, pro se.

Patrick E. Whelan and Daniel K. O'Brien, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

LARO, Judge:  Michael J. Fitzpatrick petitioned the Court to redetermine the following determinations of deficiencies and additions to tax:

| | | Additions to Tax | | |
| | | Sec. | Sec. | Sec. |
| Year | Deficiency | 6653(b) | 6653(b)(1) | 6653(b)(2) |
| 1981 | [1]$30,601 | $15,301 | --- | --- |
| 1982 | 96,418 | --- | $48,209 | 50% of the interest due on $96,418 |

[1]The parties stipulated that the deficiency for 1981 should be reduced by $17,253.

Following our decision in Fitzpatrick v. Commissioner, T.C. Memo. 1995-548,[1] the issues before the Court are as follows:

---

[1] In Fitzpatrick v. Commissioner, T.C. Memo. 1995-548, the Court decided that:  (1) Respondent was not collaterally or equitably estopped from issuing a notice of deficiency due to the earlier issuance of the no-change letter to petitioner for the same tax years; (2) the notice of deficiency was not in violation of the Double Jeopardy Clause of the Fifth Amendment; (3) petitioner is collaterally estopped from denying his participation in the bribery scheme; and (4) petitioner is collaterally estopped from denying that there is an underpayment of his income tax, and that some part of the underpayment is due to fraud for purposes of sec. 6653(b), for each of the years 1981 and 1982.
Sec. 6653(b)(2) requires respondent to establish the specific portion of the underpayment of tax which is attributable to fraud for purposes of applying the "50 percent of the interest payable" provision. Cooney v. Commissioner, T.C. Memo. 1994-50. Since we decided in Fitzpatrick v. Commissioner, supra, that
(continued...)

1.   Whether respondent correctly determined that petitioner received unreported income from bribes in the years 1981 and 1982 in the amounts of $50,000 and $206,087, respectively.  We hold that respondent's determinations are correct.

2.   Whether respondent correctly determined that the entire amount of the deficiency for 1982 was attributable to fraud for purposes of section 6653(b)(2).  We hold that she did.

Unless otherwise stated, section references are to the Internal Revenue Code applicable to the years in issue.  Rule references are to the Tax Court Rules of Practice and Procedure. Dollar amounts are rounded to the nearest dollar.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulations of fact and the exhibits submitted therewith are incorporated herein by this reference.  Petitioner resided in Taos Ski Valley, New Mexico, when he filed his petition.

From 1980 through 1982, petitioner was a loan officer in the real estate and construction lending department of the Bank of New York (the Bank).  He initially served as assistant treasurer, and in late 1981, he was promoted to assistant vice president of the Bank.

---

[1](...continued)
petitioner cannot deny that a part of the underpayment was due to fraud for purposes of sec. 6653(b) and sec. 6653(b)(1) for 1981 and 1982, respectively, it is left to decide the amount of the addition to tax under sec. 6653(b)(2) for 1982.

On September 26, 1980, Brenton's Cove Development Co. (Brenton's) closed on a $5.5 million construction loan with the Bank. Petitioner worked on this loan as a loan officer for the Bank. Herbert L. Finley (Finley) and Radcliffe Romeyn (Romeyn) were the general partners of Brenton's. On April 23, 1981, the Bank approved a construction loan advance of $30,000 for Brenton's, the proceeds of which were wired to petitioner's brother on April 24, 1981.

On November 28, 1980, petitioner recommended that the Bank Credit Committee approve a $6.17 million construction loan to Landing Development Co. (Landing) and Long Wharf Development Co. (Long Wharf) for the purpose of financing the construction of two condominium hotels, Inn on the Harbor and Inn on Long Wharf (the Inns). The Bank conditionally approved this loan. On April 16, 1981, Landing closed on a construction loan of $3,000,055 from the Bank. Finley, Romeyn, and William R. Wing (Wing) were general partners of Landing and Long Wharf; Timothy M. Dwyer (Dwyer) was a general partner of Long Wharf only.

In the summer of 1981, R. Perry Harris, a representative of a real estate investment group, expressed an interest in possibly purchasing the Inns and later selling each completed unit as a time share promotion. The original Bank commitment to Landing and Long Wharf did not permit the borrowers to market the condominiums as time shares. In order for the sale of the Inns

to be accomplished, a change in the Bank loan agreement had to be effected.

On December 17, 1981, Inn Group Associates (Inn Group), a limited partnership, was formed for the purpose of acquiring the Inns. The general partner of Inn Group was R. Perry Harris, and the limited partners were R. Perry Harris, Finley, Romeyn, Wing, Dwyer, Tremont Street Corp., and Western Atlantic Investment, Inc.

In December 1981, the partners of Landing and Long Wharf entered into purchase and sale agreements with Inn Group whereby the Inns were sold to Inn Group for $10.26 million. Pursuant to these agreements, Inn Group assumed Landing's and Long Wharf's obligations as to the Bank's construction loan, and Landing received a $1 million nonrefundable deposit. Petitioner, acting on behalf of the Bank, was a signatory to the assumption agreement.

On December 18, 1981, Landing used the $1 million deposit to make $250,000 payments to Finley, Romeyn, and Wing. The remainder of the deposit was utilized to pay $50,000 in construction bills and $200,000 to petitioner. The $200,000 payment was made to petitioner so that he would approve the modification of the loan agreement. Petitioner directed that Landing make the payment by two checks, one for $50,000, the other for $150,000, which were deposited in a Panamanian bank, in

the checking account of Rain & Shine (R&S), a Panamanian corporation. The memo blank on each check reflected that it was for "furniture, fixtures and equipment". These notations were fabrications designed to permit Landing to deduct these expenditures as business expenses.

The distribution of the $1 million deposit, of which $750,000 went to the general partners of Landing and the rest to petitioner, violated the terms of Landing's construction loan from the Bank. Under the loan agreement, the first income earned by Landing was to have been applied toward paying off the construction loan to the Bank.

Petitioner endorsed the $50,000 and $150,000 checks in 1981 and 1982, respectively. Petitioner directed the Panamanian bank to mail R&S's account records to him in the United States. A small quantity of temporary checks for R&S was mailed to petitioner at his home. All checks on the R&S account were drawn by petitioner, using either his name or the fictitious name of Daniel Dunn. In 1981, a check was drawn on the R&S account payable to petitioner for $45,000. This check was signed by petitioner as an authorized signatory and was ultimately deposited to his New York City checking account.

During 1982, disbursements totaling $143,075 were made from the R&S account to the Hill Winery Associates checking account (Hill account) at the Citizens First National Bank of New Jersey,

Ridgewood, New Jersey (Citizens Bank).  All deposits to the Hill account were transferred from the R&S checking account with the exception of loan proceeds in the amount of $40,000 deposited to the Hill account on November 24, 1982.  In 1982, the below-listed disbursements, which inured to the personal benefit of petitioner, were made from the Hill account:

| Date Disbursed | Amount | Payee | Purpose |
|---|---|---|---|
| 2/3/82 | $28,903 | FBF Winery | Winery partnership with petitioner's brother in California |
| 2/28/82 | 35,000 | Mary Fusco | Petitioner's purchase of residence located in City Island, New York |
| 5/5/82 | 20,000 | Elaine M. Fitzpatrick | Repayment of loan to petitioner's mother |

During February and March of 1982, the Hill account had a mailing address of 313 Columbus Avenue, New York, New York.  The monthly statements for February and March were undeliverable at that address, and the statements were thereafter picked up by petitioner's father, who was an employee of Citizens Bank.

On September 16, 1982, petitioner, acting on behalf of the Bank, was a signatory to a Building Loan Agreement with Long Wharf.  The agreement authorized the release of $3,115,000 in construction loan proceeds to Long Wharf.

On September 27, 1982, Landing made a $50,000 payment to Pares Y Nones, S.A., a Panamanian corporation, because petitioner had enabled the Long Wharf loan closing to take place in spite of the fact that Long Wharf did not have any coastal zone management

approvals.  Petitioner was instrumental in opening an account for Pares Y Nones, S.A., into which the $50,000 was deposited.  In connection with the purchase of a 71-foot Bermuda ketch by Banba Associates on December 15, 1982, petitioner directed a Panamanian attorney to wire $42,500 from the Pares Y Nones, S.A. account.  Approximately 1 month prior to directing this disbursement, petitioner had obtained a survey report on the ketch.  Petitioner was the signatory on behalf of the seller.

During 1982, Dwyer Construction Co. made repairs and renovations to petitioner's residence.  The renovations were first discussed by Finley, Romeyn, and petitioner at the Long Wharf loan closing.  Petitioner requested that a Jacuzzi be installed in his house and that Landing send some of its construction workers to his house to do renovations.  Landing made payments of $6,087 to Dwyer and Dwyer Construction Co. in connection with the renovations.

On November 2 and 29, 1984, Romeyn wrote to petitioner and demanded payment from him initially in the amount of $35,000 and thereafter in the amount of $45,000.  These demands were made by Romeyn under the threat that, if the money was not forthcoming, the Internal Revenue Service would be advised of petitioner's involvement in the R&S account and the Pares Y Nones, S.A. account.  Petitioner never complied with either of Romeyn's demands.

In 1987 and 1989, Finley, Romeyn, and petitioner were each convicted of related crimes involving dishonesty and false statements in the Federal District Court for the District of Rhode Island. Finley and Romeyn each pled guilty in 1987 to two counts of making false statements on documents submitted to the Federally insured Old Colony Co-Operative Bank requesting construction loan advances, in violation of 18 U.S.C. section 1014. Romeyn also pled guilty in 1987 to one count of making material false statements on the Landing 1982 Federal income tax return in violation of section 7206(1); these material false statements consisted, in part, of falsely deducting payments made to R&S as business expenses. On May 19, 1989, petitioner was convicted of willful attempted evasion of his 1981 and 1982 income tax liabilities under section 7201. This conviction was affirmed by the Court of Appeals for the First Circuit. See United States v. Fitzpatrick, 892 F.2d 162 (1st Cir. 1989). Petitioner was also convicted of two counts of conspiracy to travel, and use of the mails and interstate commerce between Rhode Island, New York, and the Republic of Panama to facilitate bribery and the distribution of the proceeds of bribery in violation of 18 U.S.C. sections 1952 and 2.

OPINION

A. Unreported Income

Respondent asserts that the transfers from Landing, into the R&S and Pares Y Nones, S.A. accounts and the repairs by Landing to petitioner's home constituted income in the respective amounts of $50,000 and $206,087 for 1981 and 1982. Petitioner argues that the deposits were loans, rather than income. We agree with respondent.

Section 61(a) defines gross income as "all income from whatever source derived." This definition includes all "accessions to wealth, clearly realized, and over which the taxpayers have complete dominion", including bribes. Sec. 61(a); Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 431 (1955); Hawkins v. United States, 30 F.3d 1077, 1079 (9th Cir. 1994); Blohm v. Commissioner, 994 F.2d 1542, 1549 (11th Cir. 1993), affg. T.C. Memo. 1991-636; United States v. Wyss, 239 F.2d 658 (7th Cir. 1957); sec. 1.61-14(a), Income Tax Regs.

Respondent's determinations are presumed correct, and petitioner has the burden to establish that they are erroneous. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Some courts have recognized a limited exception to this general rule where the Commissioner alleges that the taxpayer has unreported illegal income. Petzoldt v. Commissioner, 92 T.C. 661, 688 (1989). In such cases, the deficiency determination must be supported by some evidentiary foundation linking the taxpayer to the alleged income-producing activity. Blohm v. Commissioner,

supra at 1549; Erickson v. Commissioner, 937 F.2d 1548, 1551 (10th Cir. 1991). Once this minimal evidentiary showing has been made, the deficiency determination is presumed correct, and it becomes the taxpayer's burden to prove it erroneous. Blohm v. Commissioner, supra at 1549. Testimony of a taxpayer which is unsupported by documentary evidence may be insufficient to satisfy the taxpayer's burden. See Ghadiri v. Commissioner, T.C. Memo. 1996-528; Alvarez v. Commissioner, T.C. Memo. 1995-414.

In Fitzpatrick v. Commissioner, T.C. Memo. 1995-548, the Court held that petitioner was collaterally estopped from denying his participation in the bribery scheme. Remaining in issue is the amount of unreported income he received in 1981 and 1982. We find that petitioner has not met his burden of proving that the amounts he directed Landing to deposit in the R&S and Pares Y Nones, S.A. accounts are not includable in his gross income. Further, petitioner has not proven that the repairs to his home which Landing paid for did not constitute income to him.

Respondent argues that petitioner should include in income the deposits into the R&S and Pares Y Nones, S.A. accounts and that he exercised dominion and control over those accounts. We agree with respondent. All of the deposits to the R&S account came from the Bank's construction loan clients to whom petitioner rendered services, and all of the disbursements from the account were made by checks drawn on the account that were signed either

by petitioner personally or by petitioner with the alias Daniel Dunn. Some of the disbursements from the account were channeled to a New Jersey bank account in the name of Hill Winery Associates which had no business purpose other than to pay major personal expenditures of petitioner and for which petitioner's father picked up all the bank statements. During 1981, the sole check disbursed from this account was for $45,000 and was signed by petitioner, was made payable to petitioner, and was ultimately deposited by petitioner in his New York City checking account. Accordingly, we hold that petitioner must include $50,000 and $150,000 in his 1981 and 1982 income, respectively.

Petitioner similarly has failed to prove that he did not exercise dominion and control over the Pares Y Nones, S.A. account. The evidence has shown that petitioner was involved in opening and operating the account. Petitioner had obtained a survey on a ketch; then approximately 1 month later, he directed a Panamanian attorney to wire $42,500 from the account. Petitioner was signatory on behalf of the seller of the Bermuda ketch. Accordingly, we find that petitioner must include the $50,000 deposited by Landing into the Pares Y Nones, S.A. account in his 1982 income.

Additionally, respondent contended that petitioner should include in income the amount of renovations on his home paid for by Landing. The renovations were first discussed by Finley,

Romeyn, and petitioner at the Long Wharf closing. Petitioner requested that a Jacuzzi be installed in his home along with other alterations, and that Landing send some of its construction workers to do the work. Landing made $6,087 in payments to fund the renovations. Petitioner admitted that he never expected that he would have to pay for the repairs. Accordingly, we find that petitioner should include the amount Landing paid for the renovations on his home in his 1982 gross income.

## 2. Fraud Addition Under Section 6653(b)

Respondent determined that petitioner was liable for additions to tax for fraud in each year in issue. Respondent must prove her determinations of fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b); Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983). Fraud requires a showing that the taxpayer intended to evade a tax known or believed to be owing. Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968). As discussed above, respondent must prove the amount of the underpayment that is attributable to fraud for purposes of section 6653(b)(2). See supra note 1.

In Fitzpatrick v. Commissioner, supra, the Court decided that petitioner's conviction under section 7201 collaterally estops him from denying that there is an underpayment of his income tax, and that some part of the underpayment is due to fraud for purposes of section 6653(b), for each of the taxable

years 1981 and 1982.  Consequently petitioner is liable for the addition to tax under section 6653(b) for 1981, and he is liable for the addition to tax under section 6653(b)(1) for 1982.  The only remaining issue that we must decide is the amount of the understatement of tax in 1982 which is attributable to fraud for purposes of section 6653(b)(2).  We recognize that respondent has the burden of proving fraud by clear and convincing evidence whereas petitioner, as explained above, has the burden of showing that he did not receive unreported income to overcome respondent's determination of deficiencies.  We find that respondent has met her burden.  The evidence clearly and convincingly shows that petitioner had dominion and control over the R&S and Pares Y Nones, S.A. accounts, that the amounts deposited in those accounts by Landing constituted unreported income to him, and that he received additional unreported income as a result of the repairs on his home which Landing paid for. The unreported income consisted of the bank deposit proceeds and the renovations on petitioner's house.  Consequently, the entire amount of petitioner's unreported income for 1982 is attributable to fraud and is subject to the provisions of section 6653(b)(2).

We have considered all arguments made by petitioner for contrary holdings and, to the extent not discussed above, find them to be without merit.

To reflect the foregoing,

<u>Decision will be entered under Rule 155</u>.