T.C. Memo. 1997-187


UNITED STATES TAX COURT


THOMAS G. ROOTS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 19287-95.                    Filed April 21, 1997.


    P underreported income from his rental and
insurance businesses during 1984, 1985, 1986, and 1987.
P did not keep records for either business, and he
commingled funds of each business with funds of the
other and with his personal funds.  P received
commission checks from his insurance business, but he
reported on his tax returns only the commissions for
which he received Forms 1099, Miscellaneous Income.
P told rental tenants to mislead Internal Revenue
Service agents as to the amount of rent they paid to
him.  P was convicted of willfully attempting to evade
or defeat income taxes under sec. 7201, I.R.C., for his
1987 taxable year and of willfully attempting to
interfere with the administration of internal revenue
laws in violation of sec. 7212(a), I.R.C.
    <u>Held</u>:  The currency deposits to P's bank account
for his 1984 and 1985 taxable years are taxable
deposits.
    <u>Held</u>, <u>further</u>, P is liable for additions to tax
for fraud under sec. 6653(b)(1) and (2), I.R.C., for

1984 and 1985 and under sec. 6653(b)(1)(A) and (B),
I.R.C., for 1986 and 1987.

Held, further, P is liable for additions to tax
for substantial underpayment of tax liability under
sec. 6661, I.R.C., for 1984, 1985, 1986, and 1987.


Robert L. Gallaway, for petitioner.

Margaret C. Tinagero, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


LARO, Judge:  Thomas G. Roots petitioned the Court to
redetermine respondent's determination of the following Federal
income tax deficiencies and additions[1] thereto:

| | | Additions to Tax | | |
| Year | Deficiency | Sec. 6653(b)(1) | Sec. 6653(b)(1)(A) | Sec. 6661 |
|------|------------|-----------------|--------------------|-----------|
| 1984 | $30,759 | $15,380 | --- | $7,690 |
| 1985 | 36,545 | 18,272 | --- | 9,136 |
| 1986 | 5,166 | --- | $3,875 | 1,292 |
| 1987 | 30,816 | --- | 23,455 | 7,704 |

Following concessions, we must decide:

1.    Whether petitioner's currency deposits to his bank
account for 1984, 1985, 1986, or 1987 are taxable deposits.  We

---

[1] For petitioner's 1984 and 1985 taxable years, respondent
also determined that if the addition to tax under sec. 6653(b)(1)
applies, the addition to tax under sec. 6653(b)(2) will apply in
an amount equal to 50 percent of the interest payable with
respect to the portion of the underpayment which is attributable
to fraud.  For petitioner's 1986 and 1987 taxable years,
respondent also determined that if sec. 6653(b)(1)(A) applies,
sec. 6653(b)(1)(B) will apply in an amount equal to 50 percent of
the interest payable with respect to the portion of the
underpayment which is attributable to fraud.

hold that they are, except for those which respondent has conceded;

2.    whether petitioner is liable for additions to tax for fraud under section 6653(b)(1) and (2) for 1984 and 1985 and under section 6653(b)(1)(A) and (B) for 1986 and 1987.  We hold that he is;

3.    whether petitioner is liable for additions to tax for substantial underpayment of tax liability under section 6661 for 1984, 1985, 1986, and 1987.  We hold that he is.

Unless otherwise indicated, section references are to the Internal Revenue Code applicable to the years in issue.  Rule references are to the Tax Court Rules of Practice and Procedure. Dollar amounts are rounded to the nearest dollar.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulations and the exhibits attached thereto are incorporated herein by this reference.  Petitioner resided in Ventura, California, when he filed his petition.

Petitioner was the sole proprietor of an insurance agency and owned residential real estate properties during the years in issue.  For 1984, 1985, and 1986, petitioner prepared his own Federal tax returns; for 1987, Thomas Proctor, a bookkeeper, prepared petitioner's return.  On the returns, petitioner reported his receipt of insurance commissions only as reflected

on Forms 1099, Miscellaneous Income, even though he knew he received additional commissions.

## 1. Rental Business

Petitioner owned approximately eight residential rental properties during each of the taxable years in issue. All rental receipts, either in cash or by check, were deposited into petitioner's account at American Commercial Bank in Ventura, California (ACB account), the same account into which he deposited income from other sources including his insurance agency. For the taxable years at issue, petitioner had the information available to him to maintain accurate records of his correct rental income, but he failed to maintain accurate records of the amount of rent he received. As summarized below and stipulated by the parties, petitioner failed to report all of his rental income for the years in issue:

| Year | Amount Reported on Return | Rental Income Received | Percentage of Rental Income Petitioner Failed to Report |
|------|---------------------------|------------------------|---------------------------------------------------------|
| 1984 | $25,560 | $39,680 | 36% |
| 1985 | 20,769 | 40,012 | 48 |
| 1986 | 21,613 | 48,742 | 56 |
| 1987 | 32,880 | 64,586 | 49 |

Petitioner submitted applications for loans to purchase property during the years in issue in which he listed his income as significantly greater than the amounts shown on his returns. On petitioner's May 19, 1986, application for a loan to purchase a property, petitioner included a statement that he received

$5,750 in gross monthly income, amounting to $69,000 annually. On petitioner's June 4, 1986, application for a loan to purchase another property, petitioner listed his annual rental income as $56,880. On the "returns" petitioner attached to the latter application, petitioner indicated that his receipts from rentals during 1984 and 1985 were $53,028 and $46,340, respectively; the amounts listed on petitioner's application and attached "returns" were significantly greater than the amounts he reported on his returns which he filed with the Internal Revenue Service.

In 1987, Jimmie and Dorothy Wilson (the Wilsons) occupied residential real property that they leased from petitioner. While an audit of petitioner's tax returns was in progress, petitioner contacted the Wilsons and told them to tell anyone who asked that they were paying petitioner $275 per month for the rental of the property. In fact, they were paying $775 per month for the rental of the property, and they had never made rental payments as low as $275 per month. Petitioner told the Wilsons that if they gave false information about the amount of rent they paid to him to anyone who asked them about it, he would not raise their rent in the future.

In June 1987, Revenue Agent Paula Lurvey (Agent Lurvey) contacted the Wilsons and inquired about the amount of rent they paid to petitioner. The Wilsons told Agent Lurvey that they paid petitioner $275 per month. In August 1990, special agents of the Criminal Investigation Division of the Internal Revenue Service

subpoenaed the Wilsons and their records concerning their payment of rent to petitioner. The Wilsons admitted at that time that they had lied in their earlier statement to Agent Lurvey. On June 10, 1987, petitioner met with Agent Lurvey. At this meeting, petitioner presented the agent with a handwritten "Rental Income" schedule representing that it reflected all of his rental income. Petitioner failed to report on this schedule that he received rental income from his tenants at 1739 Swift, even though he knew he had.

## 2. Insurance Business

Petitioner also operated an independent insurance agency in Ventura County, California, during the years in issue. Petitioner's insurance agency represented various companies, including Dairyland Insurance Co. (Dairyland), Republic Insurance Co. (Republic), Progressive, Civil Service Employees Insurance, and Blue Shield.

Petitioner deposited the cash receipts from his insurance business into his ACB account. Petitioner failed to maintain any general ledger or other accounting record for his insurance business and did not maintain separate personal and business bank accounts. In preparing his Federal income tax returns for 1984, 1985, and 1986, petitioner determined the gross receipts for his business from the Forms 1099 that were provided to him by the companies for which he sold insurance. The parties have stipulated that petitioner failed to report at least $45,347,

$122,038, $159,535, and $141,553 of gross income from his insurance business for 1984 through 1987, respectively.

During the years in issue, petitioner was selling insurance on behalf of Republic. Although petitioner received monthly commission checks, petitioner did not report the commission income he received from Republic because he did not receive a Form 1099 reflecting it. Petitioner received at least $4,256 and $6,585, respectively, in commission income from Republic.

During 1984, 1985, 1986, and 1987, petitioner received commissions of $8,775, $24,707, $37,888, and $57,510, respectively, from Dairyland. Petitioner received bimonthly commission statements from Dairyland, but no Forms 1099, so petitioner did not report the commission income he received from Dairyland. Petitioner explained that he failed to report this income because Dairyland told him that some of the payments to him were not taxable because they were not "earned". Later, petitioner testified that Dairyland did not understand what it had said. Petitioner characterized Dairyland's statement as "ignorant", but he claims to have relied on it nonetheless.

Petitioner prepared a profit and loss statement for his insurance agency for the period of January 1 through May 31, 1986, which he submitted to South Bay Savings with a loan application. Attached to the application were 1984 and 1985 "returns" prepared by petitioner which indicated gross insurance

agency income of $80,894 and $97,405, and net profit of $41,996 and $45,515, respectively.

### 3. Miscellaneous Income

In 1985, petitioner sold to Mr. Fry real property located at 1271 Milligan Street, Camarillo, California. Petitioner failed to report $4,257 of capital gains income from the sale of this property. Petitioner also received referral fee income from Attorney William Bogue for referring clients to Mr. Bogue; neither party introduced evidence as to the amounts of the referral fees.

In 1985, petitioner acquired 3,000 units in Diamond Shamrock Offshore Partners Limited Partnership (Diamond Shamrock). In 1985, 1986, and 1987, respectively, Diamond Shamrock distributed to petitioner $2,800, $8,400, and $8,400.

Also, in 1985, petitioner acquired 3,000 units in Union Exploration Partners, Ltd. (Union Exploration). Through his ownership of the Union Exploration stock, petitioner received distributions of $1,812 and $5,654 in 1985 and 1987, respectively.

### 4. Criminal Conviction

On April 7, 1992, a criminal indictment was filed against petitioner in the U.S. District Court for the Central District of California. The indictment alleged that petitioner willfully attempted to evade or defeat his 1985, 1986, and 1987 income taxes in violation of section 7201, and that petitioner violated

section 7212(a) by knowingly and corruptly endeavoring to obstruct or impede the due administration of the Internal Revenue Code by requesting one of his tenants to lie to the revenue agent about the amount of rent the tenant paid to petitioner.  On May 29, 1992, petitioner pled guilty to willfully attempting to evade income taxes for his 1987 taxable year in violation of section 7201 and to willfully attempting to interfere with the administration of internal revenue laws in violation of section 7212(a).  On August 10, 1992, the District Court sentenced petitioner to 8 months of imprisonment and 5 years of probation and imposed a $20,000 fine.

OPINION

A.  Unreported Income

Respondent determined that certain deposits into petitioner's ACB account constituted unreported income to him.  Petitioner argues that the disputed deposits are not taxable to him in the subject years because they were loans or previously taxed income.  We agree with respondent.

Section 61(a) defines gross income as "all income from whatever source derived".  Sec. 61(a)(1).  This definition includes all "accessions to wealth, clearly realized, and over which the taxpayers have complete dominion."  Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 431 (1955); Hawkins v. United States, 30 F.3d 1077, 1079 (9th Cir. 1994).  When a taxpayer keeps no books or records for his or her business, the

Commissioner generally may recompute the taxpayer's income under any method that the Commissioner determines clearly reflects income. Sec. 446(b); Commissioner v. Hansen, 360 U.S. 446, 467 (1959); Cole v. Commissioner, 586 F.2d 747, 749 (9th Cir. 1978), affg. 64 T.C. 1091 (1975); Meneguzzo v. Commissioner, 43 T.C. 824, 831 (1965). The Commissioner may use any method that is reasonable in light of the facts and circumstances of the particular case. Giddio v. Commissioner, 54 T.C. 1530, 1532-1533 (1970).

When the taxpayer's records are incomplete, the Commissioner may rely on the bank deposits method to reconstruct income. Nicholas v. Commissioner, 70 T.C. 1057, 1064 (1978); Estate of Mason v. Commissioner, 64 T.C. 651, 656 (1978), affd. 566 F.2d 2 (6th Cir. 1977). The propriety of this method is well established. Parks v. Commissioner, 94 T.C. 654, 658 (1990); Nicholas v. Commissioner, supra at 1064; see also Estate of Mason v. Commissioner, supra at 656-657; Harper v. Commissioner, 54 T.C. 1121, 1129 (1970). Although not conclusive, we consider bank deposits to be prima facie evidence of income. Tokarski v. Commissioner, 87 T.C. 74, 77 (1986); Estate of Mason v. Commissioner, supra at 656-657; see also Price v. Commissioner, T.C. Memo. 1995-187, supplemented by T.C. Memo. 1995-290.

Once a bank deposits analysis is performed, the burden normally is on the taxpayer to prove that the deposits do not represent unreported income. See Rule 142(a); Welch v.

Helvering, 290 U.S. 111, 115 (1933); see also Sproul v. Commissioner, T.C. Memo. 1995-207. Testimony of a taxpayer which is unsupported by documentary evidence may be insufficient to satisfy his or her burden. See Alvarez v. Commissioner, T.C. Memo. 1995-414; Price v. Commissioner, supra.

In this case, respondent used the bank deposits method to reconstruct petitioner's income. Petitioner argues that several items which were deposited into petitioner's ACB account should not constitute income. We will discuss each item in turn.

First, petitioner contends that $2,812 from the sale of Jerrico, Inc. stock in 1984 and $9,507 from the sale of Securities Settlement Corp. stock in 1985 should not be taxed as unreported income. Respondent conceded in her brief that these amounts are not taxable.

Second, petitioner contends that he borrowed $50,000 from Ray Kaiser to open his insurance agency. Petitioner testified that Mr. Kaiser first contacted him because Mr. Kaiser would be receiving a $50,000 disability settlement and wanted to invest the proceeds in an annuity from which he would receive an adequate return. Petitioner testified that he suggested a Prudential annuity, but Mr. Kaiser rejected it. Petitioner testified that he deposited the funds into various savings and loans but then withdrew the funds and kept them in a "secret hiding spot" in his house because he was dissatisfied with the return on investment he was receiving from the banks. Petitioner

offered no explanation as to how he would realize a greater return by holding the money in cash in his home.  Since petitioner's rationale for the loan defies common sense and we find petitioner's testimony uncorroborated by the evidence, petitioner has not met his burden of proof, and he must include the $50,000 in his 1986 income.

Third, petitioner asserts that deposits totaling $2,800, $4,900,[2] and $8,400 for 1985, 1986, and 1987, respectively, constituted nontaxable distributions from Diamond Shamrock, and that a deposit of $5,022 in 1987 constituted a nontaxable distribution from Union Exploration.  Petitioner attempted to prove this assertion based on security account statements indicating distributions from Diamond Shamrock and Union Exploration.  These statements, however, merely indicate that petitioner received distributions, not that he cashed the distribution checks and then deposited the cash into his ACB account.  Petitioner did not have deposits in his ACB account which corresponded to amounts of the distributions; rather, petitioner would have us aggregate various deposits in the amounts of the distributions.  Also, when his attorney asked him if the dividends from the Diamond Shamrock and Union Exploration investments were deposited into his ACB account, petitioner testified that he "would assume" they all went in.  Since

---

[2] The parties stipulated that the amount of the Diamond Shamrock distributions at issue for 1986 was only $4,900.

petitioner himself is unsure whether he deposited the distribution proceeds and there is no evidence to establish that he did, we find that the deposits in question are includable in his income.

Further, petitioner contends that he issued checks totaling $3,000 to Linda Holliday for services in 1987 and that she then returned the money to him since they were dating so that he could deposit it in his account. Petitioner claims that he had Ms. Holliday endorse the checks so that he could redeposit them and have a record for Federal income tax purposes. The only documentary evidence petitioner presented to prove this transaction was copies of checks payable to Ms. Holliday. Ms. Holliday did not testify as to this matter, and petitioner did not explain why she did not testify. Accordingly, we find that petitioner has not met his burden of proof with respect to the $3,000 deposit in 1987.

Petitioner next alleges that a $2,500 deposit in 1985 constituted the repayment by Peter Zelinski of sums owed to petitioner and that $16,275 in deposits should not be included in his 1987 income because they are the result of the repayment of a loan he made to Gloria Treadwell. In both instances, there is no evidence that petitioner lent money to or paid any expenses of Mr. Zelinski or Ms. Treadwell. None of the alleged checks or deposit slips are in evidence. Neither Mr. Zelinski nor Ms. Treadwell testified at trial. Because there is no proof of

the existence of the loans or the repayment thereof, petitioner must include the $2,500 and $16,275 deposits in his income for 1985 and 1987, respectively.

Moreover, petitioner contends that in 1987 he paid $3,500 to his attorney, William T. Bogue, for services, that Mr. Bogue endorsed the check to petitioner, petitioner gave Mr. Bogue $3,500 cash, and petitioner deposited the check in petitioner's account. Petitioner introduced into evidence a copy of a bank statement and deposit ticket for the $3,500 deposit but did not introduce any evidence proving that the $3,500 cash petitioner paid to Mr. Bogue came from his ACB account. Under United States v. Boulet, 577 F.2d 1165, 1167 (5th Cir. 1978), in a bank deposits method of proof case, deposits are added, nontaxable deposits are eliminated, and cash expenditures are added to derive gross income. Since petitioner did not prove that the $3,500 cash originated from his bank account, the $3,500 redeposit would decrease taxable income, but the cash expenditure of $3,500 would increase taxable income in a like amount. Accordingly, petitioner must include the $3,500 deposit in his 1987 income.

Petitioner also claims that in 1987, he paid Mr. Bogue by transferring his car ownership to Mr. Bogue; that Mr. Bogue refunded to petitioner the $2,200 difference between the value of the car and the value of Mr. Bogue's services; and that petitioner deposited the $2,200 check in his ACB account.

Petitioner produced an illegible copy of the $2,200 check at trial. Mr. Bogue testified at trial that he returned only $900 to $1,000 to petitioner in exchange for the automobile. Petitioner testified that the car had a $7,000 value, while Mr. Bogue testified that the car had a $2,000 book value. We are not persuaded that petitioner has met his burden of proof. Accordingly, we sustain respondent's determination as to the $2,200 deposit in 1987.

Lastly, petitioner alleges that a deposit of $4,348 should not be included in his 1984 income because it is "from funds previously acquired and retained by Petitioner". There is no evidence to substantiate that claim, and accordingly we find that the $4,348 deposit is includable in his 1984 income.

We thus hold that all the disputed deposits were taxable income.[3] Accordingly, petitioner must include all of the contested deposits in his income for the years in issue.

B. Addition to Tax for Fraud

---

[3] In so holding, we note that petitioner also alleges that he incurred a $15,523 casualty loss for 1984 because he forwarded that amount to Lewco Securities, which claimed to be an agent of Lehman Brothers Kuhn Loeb, Inc. (Lehman Brothers), but Lehman Brothers never received the funds or established an account for him. In support of his claim, petitioner has introduced only his uncorroborated testimony and evidence that his account balance with Lewco Securities fell below the minimum margin maintenance requirements. Petitioner never identified the names or positions of the individuals with whom he dealt at Lewco Securities. We do not allow him a deduction for a casualty loss.

Respondent determined that the deficiencies for 1984, 1985, 1986, and 1987 were attributable to fraud. Respondent must prove her determinations of fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b); Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983). Fraud requires a showing that the taxpayer intended to evade a tax known or believed to be owing. Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968). In order to carry the burden of proof on the issue of fraud, respondent must prove that: (1) Petitioner underpaid his tax in each year and (2) some part of each underpayment was due to fraud. See Lee v. Commissioner, T.C. Memo. 1995-597. With respect to section 6653(b)(1)(A) and (B), applicable to petitioner's 1986 and 1987 taxable years, if respondent establishes that some part of petitioner's underpayment was due to fraud, the entire underpayment is treated as attributable to fraud unless petitioner proves otherwise. Sec. 6653(b)(2). With respect to section 6653(b)(2), applicable to petitioner's 1984 and 1985 taxable years, respondent must prove the portion of the deficiency that is attributable to fraud. Sec. 6653(b)(2); Franklin v. Commissioner, T.C. Memo. 1993-184.

### 1. Underpayment

Based on our careful review of the record, we find that respondent has clearly and convincingly proven that petitioner underpaid his taxes for 1984, 1985, 1986, and 1987. The record clearly convinces us that petitioner had significant amounts of

income that were not reported on his 1984, 1985, 1986, and 1987 tax returns. Indeed, before trial petitioner conceded adjustments in his income tax in the respective amounts of $48,159, $131,545, $159,535, and $71,946 for the years in question. Thus, with respect to each of petitioner's taxable years in issue, we hold that respondent has met her burden on the first prong of the two-prong test for fraud.

### 2. Fraudulent Intent

Fraud is defined as an intentional wrongdoing designed to evade tax believed to be owing. Powell v. Grandquist, 252 F.2d 56 (9th Cir. 1958); Miller v. Commissioner, 94 T.C. 316, 332 (1990). The existence of fraud is a question of fact. Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Fraud is never presumed or imputed; it must be established by independent evidence that establishes a fraudulent intent on the taxpayer's part. Otsuki v. Commissioner, 53 T.C. 96, 106 (1969). For respondent to prevail, she must show that petitioner intended to conceal, mislead, or otherwise prevent the collection of taxes. Korecky v. Commissioner, 781 F.2d 1566, 1568 (11th Cir. 1986), affg. per curiam T.C. Memo. 1985-63; Stoltzfus v. United States, supra at 1004; Webb v. Commissioner, 394 F.2d 366, 377 (5th Cir. 1968), affg. T.C. Memo. 1966-81; Rowlee v. Commissioner, supra at 1123. Because direct proof of a taxpayer's intent is rarely available, fraud may be proven by circumstantial evidence, and

reasonable inferences may be drawn from the relevant facts. Spies v. United States, 317 U.S. 492, 499 (1943); Stephenson v. Commissioner, 79 T.C. 995, 1006 (1982), affd. 748 F.2d 331 (6th Cir. 1984); Collins v. Commissioner, T.C. Memo. 1994-409.

We often rely on certain indicia of fraud in deciding the existence of fraud. Although no single factor is necessarily sufficient to establish fraud, the presence of several indicia is persuasive circumstantial evidence of fraud. Beaver v. Commissioner, 55 T.C. 85, 93 (1970). The "badges of fraud" include: (1) Understatement of income; (2) inadequate records; (3) failure to file tax returns; (4) implausible or inconsistent explanations of behavior; (5) concealing assets; (6) failure to cooperate with tax authorities; (7) income from illegal activities; (8) an intent to mislead which may be inferred from a pattern of conduct; and (9) dealings in cash. Bradford v. Commissioner, 796 F.2d 303, 307 (9th Cir. 1986), affg. T.C. Memo. 1984-601; Petzoldt v. Commissioner, 92 T.C. 661, 699 (1989); Rowlee v. Commissioner, supra at 1125. These "badges of fraud" are nonexclusive, Niedringhaus v. Commissioner, 99 T.C. 202, 211 (1992), and the taxpayer's education and business background are relevant to the determination of fraud, see Wheadon v. Commissioner, T.C. Memo. 1992-633.

First, we recognize that petitioner was convicted of income tax evasion pursuant to section 7201 for his 1987 tax year. As a result, petitioner is collaterally estopped from denying

liability for civil fraud with respect to 1987.  Gray v.
Commissioner, 708 F.2d 243, 246 (6th Cir. 1983), affg. T.C. Memo.
1981-1.

Next, we consider whether respondent established that
petitioner committed fraud for his 1984, 1985, and 1986 taxable
years.  Viewing the record as a whole, we are satisfied that
respondent has met her burden of proving fraud.  Among other
things, we note that petitioner:  (1) Intentionally understated
his income, (2) did not keep books for either his rental or
insurance business, (3) failed to segregate his other income and
expenses from the income and expenses of his insurance agency and
rental activities, and (4) engaged in conduct which clearly
indicates his attempt to conceal income by instructing his
tenants to lie to the Internal Revenue Service about the rent
they paid to him.[4]  Petitioner had a 4-year pattern of
underreporting his gross income; petitioner admits that he
received commission checks for insurance commissions but did not
report these amounts unless the insurance companies reported the
amounts on Forms 1099; and petitioner admits that he received and
failed to report rental income from his tenants at 1739 Swift.
On loan applications, he disclosed to financial institutions

[4] In the stipulation of facts, the parties agreed that the
Wilsons would testify that petitioner instructed the Wilsons to
lie to the Internal Revenue Service about the amount of rent they
paid.  At trial, petitioner testified that he never instructed
the Wilsons to lie.  We do not find petitioner's testimony
credible.

information which more accurately reflected his actual income than did the returns he filed. Petitioner had business acumen since he ran both an insurance and a rental business during the years in issue. We hold that petitioner's entire underpayment for each of the years 1984, 1985, 1986, and 1987 was attributable to fraud.

C.  Addition to Tax for Substantial Understatement of Tax Liability

Section 6661 imposes an addition to tax for substantial understatements of income tax. The amount of the section 6661 addition to tax for additions assessed after October 21, 1986, equals 25 percent of the amount attributable to the substantial understatement. Pallottini v. Commissioner, 90 T.C. 498, 500-503 (1988). An understatement is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return or $5,000. Sec. 6661(b)(1)(A). An understatement is reduced to the extent it is based on the tax treatment of any item regarding which: (1) There is or was substantial authority, or (2) the relevant facts were adequately disclosed in the return or in a statement attached to the return. Sec. 6661(b)(2).

Petitioner has failed to meet his burden of proof on this issue. The understatements are substantial, and the record does not establish that any of the understatements are reduced under section 6661(b)(2). We sustain respondent's determination.

We have considered petitioner's other arguments and find them to be without merit.

To reflect the foregoing,

<u>Decision will be entered under Rule 155</u>.